## In re FREEMAN COTTING COAT CO.

(District Court, D. Massachusetts. July 28, 1913.)

No. 18,581.

1. BANKRUPTCY (§ 166*)—ACTS OF—ELEMENTS—INTENT TO PREFER.

There must be an intent on the part of the alleged bankrupt to prefer, in order that an alleged preferential transfer shall constitute an act of bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 250–253, 255–258; Dec. Dig. § 166.*]

2. BANKRUPTCY (§ 166*)—ACTS OF—PREFERENCES—INTENT TO PREFER—CREDITORS' COMMITTEE.

Where, after a committee of creditors had been appointed, and the alleged bankrupt agreed to conduct its business under their "joint direction," loans were obtained with their consent from a trust company with which the bankrupt did business, upon notes which permitted the application of the surplus security upon antecedent indebtedness, to secure which loans accounts due the bankrupt were pledged which liquidated to an amount averaging 12½ per cent. more than the amount loaned, such transfers were not made by the bankrupt with intent to prefer the trust company, and the creditors, having given their approval thereto through such managing committee, were estopped to claim that the transfers constituted an act of bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 250–253, 255–258; Dec. Dig. § 166.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Bankruptcy. In the matter of bankruptcy proceedings of the Freeman Cotting Coat Company. Petition for adjudication dismissed.

See, also, 212 Fed. 551.

Friedman & Atherton, of Boston, Mass., for petitioning creditors.
Ferdinand A. Wyman, of Boston, Mass., for answering creditors.

MORTON, District Judge. This is an involuntary petition in bankruptcy. The acts of bankruptcy alleged are eight preferential transfers of property to the International Trust Company on various dates between April 23, 1912, and July 26, 1912. The respondent company has not answered, and as to it the petition goes by default. The International Trust Company has answered under section 59 of the act (Act July 1, 1898, c. 541, 30 Stat. 561 [U. S. Comp. St. Supp. 1911, p. 3445]), denying insolvency and intent to prefer. The referee has reported in favor of adjudication, and the case is here on his report.

The petitioners rely only on the first, third, fourth, fifth, and seventh acts of bankruptcy set out in the petition. The facts are not in dispute. In each instance the alleged bankrupt borrowed a sum of money from the trust company within the four months preceding the filing of this petition, and concurrently gave as collateral security for the loan assignments of accounts due to it to an amount in excess of the loan received, upon a form of note furnished by the trust company, which permitted the trust company to apply the surplus security upon antecedent indebtedness of the borrower. Practically all of the assigned accounts proved good, and in each of the five instances relied on the trust company subsequently collected an excess of collateral and under the terms of its notes applied such excess to the payment of the respondent's past indebtedness to it, which was of substantial amount. The excess of collateral received by the trust company varied on the different loans from 7 per cent. to 14 per cent. and averaged about 12½ per cent.; the total amount loaned being $16,300, the total collateral $18,626, and the total surplus $2,026.

The respondent's financial condition had become difficult as early as the latter part of December, 1911. Under date of January 1, 1912, an examination of its affairs and a report on its condition was made by expert accountants and submitted to the trust company and to several others of its principal creditors. On April 25, 1912, it agreed in writing with a committee of three, representing certain creditors, to conduct its business under their "joint direction," to make no transactions without their approval, and "more especially we will not contract any bills, nor contract any debts or pay any bills, or prefer one creditor to any other, and at any time that you will jointly request, we will place our affairs in your hands." Mr. Sears, of Wellington, Sears & Co., was soon afterward added to this committee as a fourth member. Until the filing of the bankruptcy petition on August 23d the respondent conducted its business under the supervision of this committee in an effort to pull it out of its difficulties.

Each and all of the transactions relied on as acts of bankruptcy were made in pursuance of this effort, with the approval of said com-

mittee. Each of the three petitioning creditors were represented on the committee, and the representative of each petitioning creditor approved, at the time when they were made, each of the transactions now relied on as acts of bankruptcy.

[1, 2] This statement of facts is sufficient to dispose of the controversy. An "intent to prefer" is an essential element of the acts of bankruptcy alleged, and it is plain that no such intent existed. The loans in question were made, and the security therefor was given, with the full knowledge and consent of the very creditors, who now contend that the transactions were intended as preferences and were acts of bankruptcy. The creditors' committee was fully informed as to the respondent's condition. There is no greater reason to attribute an intent to prefer to the respondent than to the creditors. The fact is that all parties hoped that the respondent would be able to continue, considered it advisable for the respondent to make the loans in question for that purpose, and regarded it as proper for the respondent to give such security as was necessary to obtain the money desired. The amount of collateral was in no case excessive, and in one instance at least seems to have been decidedly less than usually required. The character of the transactions is to be judged at the time when they were made, not by how the collateral panned out afterwards. Continental Trust Co. v. Chicago Title & Trust Co., 229 U. S. 435, 33 Sup. Ct. 829, 57 L. Ed. 1268.

Aside from the approval of the creditors the case is very different from those in which the amount of security given largely exceeds the loan made thereon, and those in which the security comprised a large proportion of the debtor's property. The presumption that a transfer which effects a preference was intended as a preference is not a conclusive one. It has been held not to arise where the payments were comparatively small, and in the ordinary course of a going business (In re Gilbert [D. C.] 112 Fed. 951; In re Douglas Coal & Coke Co. [D. C.] 131 Fed. 769; In re Stovall Grocery Co. [D. C.] 161 Fed. 882), and to be rebutted where the debtor established his ignorance of his insolvency and his honest belief that he was solvent (Re Gilbert [D. C.] 112 Fed. 951; Jones v. Howland, 8 Metc. [Mass.] 377, 385, 41 Am. Dec. 525; Remington on Bankruptcy, vol. 1, p. 117).

An insolvent has the right to endeavor to continue; he is not obliged to shut up shop the moment his assets become less than his liabilities. Tiffany v. Lucas, 15 Wall. 410, 21 L. Ed. 198. He has the right to borrow money and give security therefor according to the usual course of business.

It seems to me very doubtful whether there is any presumption of intent to prefer from loans like these, made in the ordinary course of business, upon a comparatively small margin of security, from the bank with which the debtor regularly did business. If such a presumption does arise, it is overthrown by other circumstances in this case. It would seem that an intent to prefer ought not to be presumed upon a transfer of property by an insolvent for a present advance thereon, unless the whole transaction is such as to indicate an ulterior purpose on the part of the debtor to benefit the transferee.

Even if the loans in question were acts of bankruptcy, it does not seem to me that these petitioners can complain of them. Each of the petitioners, through its representative on the creditors' committee, approved and consented to these transactions, and, having done so, is estopped from objecting to them. Re Romanow (D. C.) 92 Fed. 510; Clark v. Henne & Meyer, 127 Fed. 288, 297, 62 C. C. A. 172; Simonson v. Sinsheimer, 95 Fed. 948, 37 C. C. A. 337; In re Weiss (D. C.) 15 Am. Bankr. Rep. 457, 142 Fed. 279.

The view which has been taken of the case renders it unnecessary to decide whether the respondent was insolvent when the alleged acts of bankruptcy were committed. It does not appear that either the officers of the alleged bankrupt, or the creditors' committee, in fact believed the respondent to be insolvent on those dates, a circumstance of much significance on the question whether there was an intent to prefer. I have assumed for the purposes of this discussion that insolvency was established, without deciding that question.

The property of the respondent has been converted into cash and is now in the hands of the receivers appointed by this court. Both parties desire that it be distributed in this proceeding, but neither has suggested any way in which that result can be accomplished under a finding in favor of the respondent. I will hold the matter open for further suggestions on this point until September 8th, on which date, if no further order shall have been made in the meantime, the petition is to be dismissed, without costs.