In re TAYLOR HOUSE ASS'N.

(District Court, N. D. New York. December 29, 1913.)

BANKRUPTCY (§ 76*)—CORPORATIONS—ACTS OF BANKRUPTCY—COMMISSION—OFFICERS—GOOD FAITH—ESTOPPEL.

Petitioner, as president and secretary of a summer hotel corporation the property of which consisted largely of real estate, holding a note against the company, transferred it without consideration to M. for the express purpose of having him recover judgment against the corporation. Service was made on petitioner alone as representing the corporation. The purpose of obtaining the judgment was to issue execution, make a levy on the property, and advertise it for sale, without intent to make a sale but to form a basis or record condition for a petition in bankruptcy.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Within five days after the levy, petitioner filed an involuntary petition against the corporation alleging failure to set aside such levy as an act of bankruptcy, and that the corporation was insolvent; the purpose in so doing being to prevent another, who held a large judgment against the corporation, from securing a fixed lien which could not be set aside by bankruptcy proceedings after the expiration of four months, and which would create a preference. *Held*, that such facts were sufficient to estop petitioner to institute the proceedings.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 50, 56, 97, 99, 100; Dec. Dig. § 76.*]

In Bankruptcy. In the matter of the Taylor House Association, alleged bankrupt. On motion to confirm the report of the referee adjudicating the association a bankrupt. Denied and remanded.

Frederick H. Patterson, of New York City (George Link, Jr., of New York City, of counsel), for petitioner.

H. D. Bailey, of Troy, N. Y., for bankrupt.

RAY, District Judge. This proceeding was instituted on the 4th day of December, 1912, by the filing of a petition in involuntary bankruptcy, and which petition was executed and filed by Henry V. A. Parsell, who was the secretary of the Taylor House Association, a corporation organized and doing business under the laws of the state of New York, and which corporation owned property and for the greater portion of the six months next preceding the date of filing the petition had had its principal place of business at Schroon Lake, in the county of Warren, and state of New York. Mr. Parsell had a claim against the corporation of $1,250 in the form of a promissory note executed by the corporation. The petition alleged also that the Taylor House Association was insolvent and that it had committed an act of bankruptcy. It also alleged that the creditors of the Taylor House Association are less than twelve in number. The petition charges the act of bankruptcy as follows:

"And your petitioner further represents: That said Taylor House Association is insolvent, and that within four months next preceding the date of this petition the said Taylor House Association committed an act of bankruptcy, in that it did heretofore, to wit, on the 6th day of November, 1912, while the said Taylor House Association was insolvent, suffer and permit one of its creditors, one John G. Mahony, to obtain a judgment against it for the sum of $407.28, and allowed the said John G. Mahony to issue execution thereon, to the sheriff of Warren county in state of New York. That the said sheriff of the county of Warren, state of New York, on the 27th day of November, 1912, duly levied upon the personal property of the said Taylor House Association and has duly advertised the said personal property for sale, and that said sale of the personal property of the Taylor House Association is to take place on the 5th day of December, 1912. That should the said sale be consummated the said John G. Mahony will receive a preference in violation of the rights of your petitioner."

To this petition the corporation filed an answer executed by its president, and this answer denies the act of bankruptcy charged, denies that it was insolvent on the 6th day of November, 1912, when it is alleged that the act of bankruptcy was committed and in detail denies the levy, the advertisement of the property alleged to have been

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

levied upon, and denies that any sale of property was ever to take place, and denies that John G. Mahony has received or will receive any preference whatever, and denies any levy by any sheriff or officer. The answer also contains other allegations unnecessary to recite. A jury trial was not demanded, and the matter was referred under the rules to James A. Leary, Esq., referee, and a trial of the issues was had before him. The referee on very conflicting evidence has found that the Taylor House Association was insolvent as alleged. It is contended and urged that this finding is clearly against the weight of evidence, but this court is not disposed to reverse the finding, although the question is very close. The finding of insolvency depended entirely on the value of the real estate owned by the corporation, which consists of a summer hotel and other buildings and several acres of land situate on the westerly banks of Schroon Lake, in Warren county. The buildings themselves cost much more than the referee finds the value of the property to be. These buildings are not old or dilapidated, and if there was a market for such property it is quite probable that it would bring more than the indebtedness of the corporation.

On the trial before the referee acting as special master and under the allegations of the answer, the corporation sought to prove by appropriate questions and by an offer to make the purpose of the questions plain and unmistakable: First, that at all the times mentioned the petitioner Henry V. A. Parsell was the secretary of the corporation, and he was allowed to show and did show that up to October 28, 1912, the promissory notes upon which the judgment of John G. Mahony alleged in the petition was obtained and rendered were held and owned by Mr. Parsell. The corporation then offered to show and endeavored to show by Mr. Parsell that on the 28th of October, 1912, the said notes were transferred by Parsell to Mahony, and that Mahony brought suit thereon in the Municipal Court of the City of New York, October 31, 1912, three days later, and that the process in the suit in which such judgment was obtained was served upon said Parsell as the secretary of the corporation, and that judgment was allowed to go by default, and that thereupon a transcript of the judgment was filed in Warren county and execution issued. The Taylor House Association, the alleged bankrupt, also in substance offered and sought to show that the alleged act of bankruptcy set up in the petition of Mr. Parsell and there alleged and complained of was procured by the act of the petitioner himself and with the intent and purpose on the part of the petitioner Parsell to create an act of bankruptcy, and without any intent to actually sell any of the property under the execution, but solely for the purpose of creating a condition of which he (Parsell) could complain as an act of bankruptcy, and thereupon file a petition in bankruptcy. The corporation by appropriate questions sought to show that the notes were transferred to Mahony for the purpose of having suit brought on them, and that Mahony paid nothing for the notes, and that Parsell employed the attorney to bring the action which was brought by Mahony on said notes, and that one of the attorneys in the suit in which the judgment was obtained on the notes is attorney for Mr. Parsell in the bankruptcy proceedings, and that the

execution on the judgment rendered in favor of Mahony was issued by direction of Parsell for the purpose of creating an act of bankruptcy and with no intention of selling the property levied on under such execution. The Taylor House Association also offered a certified copy of the judgment roll in Mahony's action against the Taylor House Association. All of this proof of these alleged facts was objected to, and the objection was sustained.

The referee held that it was a question of conditions as they existed, regardless of the methods of the moving parties.

The Taylor House Association also offered to show that, when these notes were transferred to Mahony and the judgment was obtained, Parsell was president of the corporation as well as secretary. Proof of this fact was objected to, and the objection was sustained.

The record squarely presents this question: Can the president and secretary of a corporation holding a note against such corporation transfer the same without consideration to a third person for the express purpose of having that third person put the same into a judgment against the corporation, service of process being made on such officer who owned and transferred the note and no one else, and the purpose of obtaining such judgment being to issue execution thereon and make a levy on the property of the corporation and advertise same for sale, there being no intent to make a sale but to make a basis or record condition for a petition in involuntary bankruptcy? And can such officer of a corporation who so transferred such note for such purpose and with such intent and obtained such levy to be made, giving directions for the entire proceeding and employing the counsel conducting them, then file and maintain a petition in involuntary bankruptcy against the corporation of which he was president and secretary on the ground that it (the corporation) has committed an act of bankruptcy?

By section 3 of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 546 [U. S. Comp. St. 1901, p. 3422]), it is provided that:

"Acts of bankruptcy by a person shall consist of his having, * * * or (3) suffered or permitted, while insolvent, any creditor to obtain a preference through legal proceedings, and not having at least five days before a sale or final disposition of any property affected by such preference vacated or discharged such preference."

In the case now under consideration, it appears that certain property of the corporation was advertised for sale under the execution issued on the Mahony judgment, and that it was advertised to be sold on the 5th day of December, 1912. The petition was filed by Parsell on the 4th. We have a case where the president and secretary of a corporation, knowing of its insolvency, transfers a note held by himself against the corporation to a third person without consideration for the sole purpose of having the note put in a judgment, execution issued on such judgment, and a levy made; such levy remaining unreleased until within the five days preceding the time fixed for sale for the sole purpose of enabling such president and secretary to then file a petition in involuntary bankruptcy against the corporation and having it adjudicated a bankrupt. Can this be done? Ought the bankruptcy

court to tolerate such a proceeding, conceding the insolvency of the corporation at the time of the transactions referred to? The question is not free from doubt. In this case it appears that another person had obtained a large judgment against the corporation, and that, if four months ran before proceedings in bankruptcy were commenced, it would ripen into a fixed lien which could not be disturbed in the absence of fraud. In this case it also appeared that Parsell had other claims against the corporation. It would seem that the purpose of Parsell was to take such proceedings as would enable him to throw the corporation into bankruptcy, and thereby secure an equality of distribution of the assets among all the creditors and prevent the large judgment referred to from becoming a lien entitled to payment' in full. But if he, being an officer of the corporation and one of its creditors, connived with Mahony to take from him (Parsell) a note against the corporation paying no consideration therefor and bring suit thereon, Parsell employing counsel and conducting the proceedings, Mahony then to issue execution, or rather allow it to be done and cause such execution to be levied on the property of the corporation, all to the end that Parsell might then file a petition in bankruptcy against the corporation of which he was an officer, and it was understood that the property levied on should not be sold, is it an answer to such acts to say and prove that Parsell and other creditors had other valid claims, and that a prior judgment had been obtained which was about to ripen into a valid lien which could not be disturbed in bankruptcy proceedings, by reason of the four months' clause, if that time was allowed to run, and that the true spirit and intent of the bankruptcy law to bring about an equality among all creditors would be best served by procuring some act of bankruptcy, no matter how, and so defeat such lien and bring about an equal distribution of assets amongst all creditors? This would bring the bankruptcy law into play and defeat a preference, it is contended, and was not an attempt to defeat or improperly use it.

In Collier on Bankruptcy (9th Ed.) 774, it is said:

"If it appears that the act of bankruptcy was secured by the connivance of a creditor, he should not be permitted to institute the proceedings." (Bankruptcy proceedings.)

In Matter of Harks Brothers (D. C.) 142 Fed. 279, 15 Am. Bankr. Rep. 457, a judgment creditor of the alleged bankrupt, who did not join in the petition, issued an execution on his judgment against the property of such alleged bankrupt at the solicitation of the attorney for the petitioning creditors, who made arrangements with the sheriff for making the levy under such execution, and it was held that "the petitioning creditors, having brought about and assisted in conducting the levy," could not complain thereof and were estopped from setting it up as an act of bankruptcy.

In Moulton v. Coburn, 131 Fed. 201, 66 C. C. A. 90, 12 Am. Bankr. Rep. 553, it was held that:

"Except in special circumstances, a creditor assenting in writing to the terms of a common-law assignment for the benefit of creditors is not entitled

to join in an involuntary petition alleging as the sole act of bankruptcy the making of such assignment."

In Lowenstein et al. v. Henry McShane Mfg. Co. (D. C.) 130 Fed. 1007, 12 Am. Bankr. Rep. 601, it was held that:

"Creditors who participate in proceedings wherein a receiver is appointed for an insolvent corporation may not petition for the adjudication of the corporation upon an allegation that the appointment of the receiver was an act of bankruptcy."

But in Matter of Hirose, 12 Am. Bankr. Rep. 155, it was held that:

"Creditors assenting to an assignment for the benefit of creditors and acting under it to the extent of filing claims are not thereby estopped from petitioning for a decree of bankruptcy against the assignor."

In Clark v. Henne & Myer et al., 127 Fed. 288, 62 C. C. A. 172, 11 Am. Bankr. Rep. 583, it was held:

"Where, upon the proposal made at a meeting of all the creditors but one, of an insolvent debtor, he executes a transfer in the form of a deed of trust or chattel mortgage in the usual form, with power of sale and condition of defeasance of his stock of goods, wares, and merchandise, and all evidences of indebtedness to a trustee, to apply the proceeds of sale as therein stated, the creditors are estopped from setting up such conveyances as a ground to support an adjudication of bankruptcy against the debtor."

On general principles of equity it would seem that a creditor who is also an officer of a corporation ought not to be permitted to petition his debtor (such corporation) into bankruptcy on the ground that such corporation has committed an act of bankruptcy, which act he himself brought about and caused to be committed.

In Stroheim v. L. F. Perry & Whitney Co. (C. C. A. 1st Circuit) 175 Fed. 52, 99 C. C. A. 68, Stroheim & Romainn, a copartnership, with one Skelly and one Beaumont, signed and filed a petition in involuntary bankruptcy September 23, 1908, against Lewis F. Perry & Whitney Company, alleged bankrupt. On September 10, 1908, the sister of Stroheim held several notes of said alleged bankrupt, and on that day she transferred one of such notes to said Skelly without any substantial consideration for the sole purpose of enabling her said brother's copartnership to secure a sufficient number of creditors to proceed with the bankruptcy proceeding. The sister transferred another of her notes to Beaumont for the same purpose. Other of the petitioning creditors had assented to an assignment for the benefit of creditors made by said alleged bankrupt prior to the filing of such petition in bankruptcy. It was held that none of these persons were proper petitioning creditors. As to Skelly and Beaumont the court said:

"Evidently they were not creditors when they joined the petition, because evidently the whole transaction was purely colorable, and the notes still belonged to Stroheim's sister. Therefore they could not lawfully make the required oath of the voluntary petition."

As to those who had assented to the assignment, the court held they were estopped to petition the assignor into bankruptcy. If those transfers of these notes were merely colorable, why was not the transfer by Parsell to Mahony colorable merely in the eye of the bankruptcy

law, and was not Parsell procuring an act of bankruptcy against a corporation of which he was an officer, and was it not his duty to protect it from judgments obtained for the mere purpose of forcing it into bankruptcy? Did not Parsell procure this act of bankruptcy to be committed, and, if so, could he then complain of it and, as sole petitioner, make it a ground for adjudicating the Taylor House Association a bankrupt, even if by so doing he would benefit all creditors, himself with the others, except the one having a prior judgment?

In Re Weiss et al. (D. C.) 142 Fed. 279, it appeared that the claim of Weiss & Segal, one of the three petitioning creditors, was represented by Mr. Benjamin Alexander, who prepared the petition in bankruptcy and procured its presentation in court. Prior to the presentation of such petition, Mr. Alexander had an interview with Mr. Geiger, the owner of the judgment upon which the execution was issued and levy made and notice of sale of property based, and he (Alexander) requested Geiger to issue the execution with the understanding that, if Geiger did not receive his money from the alleged bankrupts after the execution was issued, he (Alexander), on the part of his client and two others who would join, would present and file a petition in bankruptcy and allege the levy of the execution on Geiger's judgment as the ground of bankruptcy. Thereupon the execution was issued and a levy made, and thereupon a petition in bankruptcy executed by Weiss & Segal and two others was filed setting forth this execution and levy as the act of bankruptcy. This question was submitted to the jury; the commission of an act of bankruptcy, etc., being denied:

"If you believe the testimony of Mr. Geiger, which is entirely uncontradicted, that he issued execution upon his judgment at the solicitation of the attorney for the petitioners who made arrangements with the sheriff for making the levy upon such execution, then I instruct you that the petitioning creditors, having brought about and assisted in conducting the execution and levy, cannot make complaint of such execution and levy and are estopped from setting it up as an act of bankruptcy, and your verdict must be for the respondent as to the alleged act of bankruptcy."

And the jury having found for the alleged bankrupts on motion to set aside the verdict, the court, Holland, D. J., held:

"Both these motions are overruled, as we are of the opinion that the jury was right in their finding, for the reason that it has been well settled that it is a just ground for refusing to allow a petitioner to complain of an act of bankruptcy which has been induced or brought about by himself. To hold otherwise would enable the unscrupulous to entrap a person into bankruptcy.' Simonson v. Sinsheimer, 95 Fed. 948, 37 C. C. A. 337. A party cannot thus take advantage of its own wrong. In re Williams, Fed. Cas. No. 17,706; Clark v. Henne, 11 Am. Bankr. Rep. 583, 127 Fed. 288, 62 C. C. A. 172.

"In these cases the act of bankruptcy in which the petitioning creditors participated was an assignment by the alleged bankrupt for the benefit of creditors; but we see no difference in principle between inducing or participating in an assignment and procuring a judgment creditor to issue execution for the sole and express purpose of enabling the procurer to file a petition in bankruptcy. A debtor might thus be entrapped into bankruptcy, who, if permitted to utilize his resources, could continue in business and eventually meet all his obligations."

In Loveland on Bankruptcy (4th Ed.) 393, it is said:

"Creditors may be estopped by their own consent to an act from alleging it against their debtor as an act of bankruptcy to procure an adjudication.

\* \* \* A person will not therefore be allowed to complain of an act of bankruptcy where he induced the act."

It is true that a bad intention on the part of the petitioner will not defeat his right to file a petition in involuntary bankruptcy when an act of bankruptcy has been committed and such act was not procured or assented to by the petitioner. But a good intention will not justify a creditor in procuring his debtor to commit an act of bankruptcy and permit him thus to become a petitioner and allege such act as the basis of an adjudication.

In view of these authorities and the offer of proof made by and in behalf of the alleged bankrupt, it seems to me clear that it was error to reject the evidence sought to be introduced, and that the report must be opened and vacated, and that the case must go back to the referee with instructions to admit all competent evidence offered on the subjects referred to and ascertain and report whether or not Mr. Parsell, the petitioning creditor, induced and procured or consented to the act of bankruptcy alleged in the petition and the facts in relation thereto, and also ascertain and report fully the relation of Parsell to the alleged bankrupt and with Mahony at the time. The parties or either of them may give further evidence on the question of values —that is, insolvency—if so advised.

Ordered accordingly.