## In re LUCEY MFG. CORPORATION.

### Appeal of FIELD et al.

(Circuit Court of Appeals, Second Circuit. June 15, 1925.)

### No. 379.

Bankruptcy ⬅76(3)—Creditors participating in receivership proceedings cannot thereafter complain that payments by receivers were preferential and constituted acts of bankruptcy.

Creditors participating in receivership proceedings, assigning claims to committee which consented to and aided receivers' continuance of part of business, cannot, on reassignment of their claims, allege payments by receivers incidental to conduct of business were preferential and constituted acts of bankruptcy.

Appeal from the District Court of the United States for the Southern District of New York.

In the matter of the Lucey Manufacturing Corporation. From a decree dismissing a petition for adjudication in bankruptcy, Henry C. Field and others, creditors of alleged bankrupt, appeal. Affirmed.

Appeal from a decree of the District Court for the Southern District of New York dismissing a petition for adjudication in bankruptcy after hearing before the court without a jury, upon stipulated facts and depositions.

The petition was filed by three creditors of the alleged bankrupt, and laid as acts of bankruptcy certain preferential payments made in August, 1924, under circumstances to be related. On August 17, 1923, a bill in equity was filed in the Southern district of New York against the alleged bankrupt, praying for the appointment of a receiver upon allegations that the affairs of the company were financially embarrassed, that its property, if liquidated in usual course,

would be largely in excess of its liabilities, but, if not protected, might not be enough to pay them all; that certain of its creditors threatened action against it, and that they would, if not restrained, obtain preferences and dissipate its assets. The receiver prayed for was to sequester the property and distribute it equitably among the creditors. The company consented to a decree; receivers were appointed and have since been in possession.

During their administration and in contemplation of a reorganization, it was thought advisable to continue a part of the business of the company in California, and the receivers deputed one Everett, a vice president of the company, to act for them and in their name in that state. On their authorization, Everett did continue the business, making contracts and paying certain of the debts so incurred. The acts of bankruptcy consist of certain of these payments; the theory of the petitioners being that the company was in fact insolvent within the meaning of the Bankruptcy Act, that the persons paid were creditors, not of the receivers, but of the company, and that the payments were necessarily made with intent to prefer them to the other creditors.

Shortly after the receivers were appointed, a committee of creditors was organized for the protection of the interests of those who should deposit their claims. The petitioners assigned their claims, now the basis of this proceeding, to the committee, and the alleged acts of bankruptcy occurred while the committee held them under these assignments. Later, and for the purpose of instituting this proceeding, the committee reassigned the claims to be the original holders, who thereupon filed the petition at bar. The committee acted throughout in co-operation with the receivers, were advised of Everett's authority from them to continue the business in California, and as an incident that he must pay such debts as were necessary to keep on. One of the committee was in California, saw Everett repeatedly, and advised with him in his conduct of his affairs.

Beekman, Bogue, Clark & Griscom and Rosenberg & Ball, all of New York City (W. Campbell Armstrong and James N. Rosenberg, both of New York City, of counsel), for appellants.

E. Bright Wilson, of New York City, and J. J. Lynch, of Chattanooga, Tenn. (Allison, Lynch & Phillips, of Chattanooga, Tenn., of counsel), for appellee.

Before HOUGH, MANTON, and HAND, Circuit Judges.

HAND, Circuit Judge (after stating the facts as above). We do not understand that any question is raised of the knowledge by the creditors' committee that the California business was being conducted as in fact it was, and that Everett was to pay and was paying such claims as were necessary to continue it. That knowledge was, moreover, acquired under circumstances which leave no doubt that the receivers' operations, of which Everett's were in substance a part, were with the committee's entire assent. While perhaps they did not know specifically of each payment made, the greater includes the less, and their general consent covered all details necessary to accomplish the general purposes in which they co-operated.

So much admitted, the petition must fail. A creditor, who would put his debtor into bankruptcy because of a preferential payment, complains of a wrong. The law requires an insolvent to distribute equally all that he has; he must be just, before he is generous. When he is not, any creditor aggrieved may take from him his property and secure its ratable distribution. Yet it is only because he has been wronged that the creditor may act; and if he has induced the debtor to make the payment, or even consented to it in advance, plainly it is not an injury and not a wrong. We have found no case in point, except In re Freeman Cotting Coat Co. (D. C.) 212 F. 548, though that accords with our view. But it is surely not necessary to find a precise application to this situation of so universal a principle, which rests upon the most obvious rules of fair dealing and has its roots in very ancient notions.

All this has no very near relation to estoppel, as the appellants seem to suppose. Under that term is properly included the conduct by which a person once wronged may disqualify himself from any effective complaint. It presupposes that the wrong has existed, and that the victim has had a remedy; it concerns itself only with whether the remedy has been lost. Such are the usual instances of assignments for the benefit of creditors, or receiverships, cases where the creditors might at one time have brought the estate into bankruptcy. The question is whether taking part in such proceedings concludes one from repudiating them later. As the law is not in general interested in the mere consistency of suitors, vacillation

may not be fatal. Perhaps others must act upon the faith of what one says before one is estopped.

The cases are not wholly clear. In Simonson. v. Sinsheimer, 95 F. 948, 37 C. C. A. 337 (C. C. A. 6), Chief Justice Taft (then Circuit Judge) held that creditors were estopped who had filed their claims under an assignment for the benefit of creditors, asked for a reference, and waited over three months before filing the petition. The theory was that this conduct had led the parties to the assignment, and others dealing with the assignees to suppose that it would stand, though there was apparently no evidence that any one had in fact relied upon their acquiescence. The rule laid down was that there must be something misleading in the creditors' conduct and some action taken on the faith of it. In Moulton v. Coburn, 131 F. 201, 66 C. C. A. 90 (C. C. A. 1), the court thought that the mere assent to an assignment was enough to conclude the assenting creditor, rather perhaps on the doctrine of election than of estoppel.

The same result was reached in Ohio Motor Car Co. v. Eiseman Magneto Co., 230 F. 370, 144 C. C. A. 512 (C. C. A. 6), when the creditor had filed his claim in a receivership and received a dividend. Among the acts of bankruptcy alleged were preferential transfers, against which the estoppel ran as well as against the receivership count of the petition. Assent in writing to an assignment for the benefit of creditors was also held enough in Despres v. Galbraith, 213 F. 190, 129 C. C. A. 534 (C. C. A. 8), and the same was true in Utz, etc., Co. v. Regulator Co., 213 F. 315, 130 C. C. A. 17 (C. C. A. 8), after the assignee had sold property on the faith of creditors' assent to the assignment. The rule is otherwise if the assent to the assignment follows the petition. Hays v. Wagner, 150 F. 533, 80 C. C. A. 275 (C. C. A. 6).

It seems to us beside the point to learn whether at bottom the two ideas have a common root in our moral conventions. Perhaps they do; perhaps it is only because others ought to be able to rely upon one's words that one may be estopped after the event, or that the event itself is not a wrong. At any rate there can be no question that the maxim, volenti non fit injuria, embodies a principle which is too ancient and indubitable to yield even to the unfortunate consequences which its application may here entail.

Order affirmed.