In the Matter of **BOWLEY & TRAVERS,
INC.,  Alleged Bankrupt.**
No. 61–B–20.

United States District Court
E. D. New York.

June 29, 1961.

Bonom & Wolfson, Brooklyn, N. Y., for alleged bankrupt; Charles Sutton, Brooklyn, N. Y., of counsel.

Ralph Heyman, Brooklyn, N. Y., for petitioning creditor.

BARTELS, District Judge.

Cross-motions for summary judgment, pursuant to Rule 56, Fed.Rules Civ.Proc., 28 U.S.C.A. The alleged bankrupt (herein "B & T") has moved for judgment dismissing the petition of the petitioning creditor herein, Samuel Dinerman (herein sometimes referred to as "Dinerman"), who in turn has moved to strike the defenses to the petition and enter judgment adjudicating the bankruptcy of B & T.

The present proceeding stems from the sale of an insurance brokerage business by Harold Bowley and James Travers, individually (herein "the sellers") and B & T, whereby the sellers sold "A certain real estate and insurance brokerage business" to B & T for $32,500, to be paid $10,000 in cash and the balance by a series of 60 promissory notes. A certificate for the only share of stock of B & T was issued to Irving P. Dinerman a member of the bar and brother of the petitioning creditor, which was then deposited with the sellers' attorney to be held in escrow as security for the payment of the purchase price. Paragraph 17 of the contract of sale provides:

> "The Purchaser shall not assign any part of the assets of the corporation owned and used in the operation of the business herein conveyed so long as any of the indebtedness to the Sellers remains unpaid. The purchaser shall have the right to sell the business or any part providing the new purchaser assumes the outstanding obligations."

It appears from an examination before trial that while the sole share of stock in B & T was issued to Irving Dinerman, his brother Samuel retained a 25% equitable interest therein.

The note which became due on July 26, 1960 was defaulted and the default continues. At a special meeting of the board of directors of B & T held December 27, 1960, Dinerman and Irving Dinerman resigned as secretary-treasurer and president of B & T, respectively, and their father, Aron Dinerman, was elected to both posts. The directors then voted to execute a general assignment for the benefit of creditors "by reason of the fact that this corporation is insolvent and unable to meet its obligations as they become due". Samuel Dinerman and Irving Dinerman then resigned as directors. At a stockholders' meeting held immediately thereafter Aron Dinerman and Florence Train, allegedly employed by Dinerman as his secretary, were elected to the board, and the action of the directors authorizing an assignment for the benefit of creditors was approved.

The sellers charge that in December, 1959 B & T sold the insurance business for the price of $42,000, receiving $10,000 cash and notes for the balance, without assuming the outstanding obligations as required by the original sale contract and, further, that in November, 1960 the remaining purchase money notes were cancelled and the indebtedness forgiven. They further allege that at a meeting between Dinerman and the sellers in October, 1960, B & T admitted its indebtedness but refused to make any further payments on the notes. Thereupon the sellers served notice that the share of stock held in escrow would be sold, but on the date set for the sale B & T moved for an injunction in the Kings County Supreme Court which was denied. Thereafter a new notice of sale was served, and again another motion for injunction was made, this time however with Irving Dinerman added as a party. On November 23, 1960 a temporary injunction was issued by the Queens County Supreme Court but when the case

was called for trial on January 3, 1961 counsel for plaintiff agreed to vacate the injunction. On the same day B & T made and filed an assignment to Herman Cohen for the benefit of creditors (herein "the assignment"). A third notice of sale was then served by the sellers, prior to January 9, 1961, noticing the sale for January 10, 1961. Dinerman's next move was the present petition in bankruptcy filed January 9, 1961. At that time there was pending before the Kings County Supreme Court a motion, *sub nom.* Bowley & Travers v. Cohen, by B & T (then controlled by the sellers) to vacate the assignment.

In support of its motion the alleged bankrupt, B & T, argues that the assignment, the sole act of bankruptcy, is void (a) under New York Stock Corporation Law, § 15, (b) under Section 17 of the contract of sale and (c) because it was promptly repudiated by B & T. It further argues that the petition itself is invalid because it has not been verified and because Dinerman participated in the sole act of bankruptcy and was thus disqualified as a petitioning creditor. Dinerman denies that he was a stockholder of record of B & T or that he participated in the assignment and relies upon the decision in In re General Assignment for Benefit of Creditors of Bowley & Travers, Inc. (Cohen), Sup., 215 N.Y.S.2d 948, refusing to vacate the assignment, and upon the alleged failure of the sellers, on gaining control of B & T, to transfer possession of the assets to the assignee.

■ Turning first to Dinerman's cross-motion, the answer filed by B & T to the petition denies insolvency and there is nothing contained in his moving papers which establishes this fact. Thus the cross-motion must be denied because there exists a genuine issue as to a material fact.

The record of these proceedings indicates that Dinerman attempted to defeat the right of the sellers to obtain possession of the stock of B & T by abortive applications for injunctions and having failed in this respect, he then attempted to frustrate their control by resorting to an assignment for the benefit of creditors which he immediately used as the basis for his petition in bankruptcy. In this dubious use of the legal process he obviously was aided by his brother Irving, an attorney, who was record holder of all the stock of the corporation and also the former president of the corporation. While such dilatory and evasive tactics cannot be condoned, the Court must nevertheless be guided by the legal rights of the parties.

■ In this determination it is unnecessary to consider the multiple arguments made by B & T. Reference to the essential contentions will be sufficient. The assignment did not violate the restrictive covenant contained in the contract because it was never intended to cover an assignment of this nature in the event of insolvency. Indeed, since the assignee stands in the position of the assignor for the purpose, among others, of marshalling, liquidating and distributing the assignor's property among creditors, the obligation to the sellers under the contract remained intact against the estate and was tantamount to an assumption thereof. Again the contract obligation was not self-executing and the validity of the assignment cannot be determined in a summary proceeding. See In re Thelmco, Inc., S.Ct.1940, 177 Misc. 484, 31 N.Y.S.2d 161; In re Brooklyn Lounge Co., Inc., S.Ct.1942, 264 App.Div. 783, 34 N.Y.S.2d 971; Gelfman v. Hamershlag & Potash, Inc., S.Ct.1939, 11 N.Y.S.2d 739. Nor can it be said that the assignment is void under Section 15 of the Stock Corporation Law for the reasons stated in In re General Assignment for Benefit of Creditors of Bowley & Travers, Inc. (Cohen), supra. This leaves for consideration the argument that Dinerman participated in the act of bankruptcy and was thereupon not in a position to act as a petitioning creditor based upon the assignment.

The basis of this claim is that Dinerman was a director of the corporation, voted approval of the execution of the assignment, assented thereto, and thus is disqualified as a petitioning creditor.

■ It appears that prior to the enactment of the Chandler Act in 1938, participation, however slight, in an assignment for the benefit of creditors served to estop a creditor from petitioning for adjudication of bankruptcy. 3 Collier on Bankruptcy, 14 Ed., ¶ 59.39, p. 645; see In re Lucey Manufacturing Corp., 2 Cir., 1925, 9 F.2d 313. In amending Section 59 of the Bankruptcy Act, the Chandler Act added subdivision "h" (11 U.S.C.A. § 95, sub. h) which provides:

"A creditor shall not be estopped to act as a petitioning creditor because he participated in any prior matter or judicial proceeding, having for its purpose the adjustment or settlement of the affairs of the debtor or the liquidation of his property, or to allege such prior matter or proceeding as an act of bankruptcy, unless he has consented thereto in writing with knowledge of the facts, if any, which would be a bar to the discharge of the debtor under this Act."

It has been held that the language of § 59, sub. h is negative in character, does not purport to codify the common law of estoppel and is only applicable where there were existing facts which would be a bar to the discharge of the debtor. Queen City Shoe Mfg. Corp. v. Commonwealth Last Co., 1 Cir., 1943, 134 F.2d 422, in which the Court stated (at page 423):

"* * * We believe it was the intention of Congress by this language merely to protect a creditor from possible bad faith of the debtor by saying, in substance, that the creditor shall not be estopped by his action in assenting to the assignment, even when in writing, if he did so in ignorance of existing facts which would prevent a discharge of the debtor. If there are no such facts the language does not apply."

It would further appear that the requirement of a consent in writing is necessary only where a creditor consents to an assignment previously made, and has no applicability where the creditor acted to procure the assignment prior to its execution. See In re Wilshire Frocks, Inc., D.C.N.Y.1942, 46 F.Supp. 377; Matter of Publishers Distributing Corp. v. J. Louis Motz News Co., 6 Cir., 1956, 238 F.2d 617.

■ The petitioning creditor herein, as a director of B & T, participated in a discussion of whether B & T should file an assignment or a voluntary petition in bankruptcy, and chose to vote with the majority of the board to execute the assignment. Dinerman's consent was with his knowledge, recorded in the minutes of the directors' meeting. Accordingly he voluntarily participated in the procurement and assented to the terms of the assignment, and this election to so assent in preference to the exercise of his rights under the Bankruptcy Act is sufficient to disqualify him as a petitioning creditor. Moulton v. Coburn, 1 Cir., 1904, 131 F. 201, 203, certiorari denied 196 U.S. 640, 25 S.Ct. 796, 49 L.Ed. 631.

■ To escape the effect of the above authorities Dinerman attempts to exculpate his participation upon the ground that the sellers after gaining control of B & T, repudiated the assignment and refused to transfer assets in the possession of the corporation to the assignee. There are a number of answers to this argument, the most important of which is that title to all of the assets was automatically transferred to the assignee, including the accounts receivable which represented the major portion thereof. Since the property covered by the assignment was in *custodia legis*, any failure by B & T to turn over physical assets could be remedied by a proceeding by the assignee under Article 2 of the Debtor and Creditor Law. See Florence Trading Corporation v. Rosenberg, 2 Cir., 1942, 128 F.2d 557. Further, the Court questions the *bona fides* of this defense, since at the time the petition was filed there was pending the aforesaid motion by B & T (then controlled by the sellers) to invalidate the assignment and since the bankruptcy petition was filed in less than a week after the execution of the assignment. Obviously a party acting in good

faith would have waited for the court's decision before acting upon the assumption that the assignment was valid, particularly when that act was the sole act of bankruptcy. Dinerman cannot under these circumstances rely upon repudiation as an excuse to justify his participation in the act of bankruptcy.

Accordingly the motion for adjudication of bankruptcy is denied and the motion dismissing the petition of the petitioning creditor is granted.

Settle order within five (5) days upon two (2) days' notice.