In the Matter of ACORN ELECTRIC SUPPLY, INC., Alleged Bankrupt.

No. 15-72-N.

United States District Court, E. D. Virginia, Norfolk Division.

March 30, 1972.

Israel Steingold, Norfolk, Va., for petitioning creditors.

Louis H. Cohn, Norfolk, Va., for alleged bankrupt.

## MEMORANDUM ORDER

WALTER E. HOFFMAN, Chief Judge.

On January 11, 1972, the petitioning creditors, Powell Electric Manufacturing Company, ITT Landmark Lighting, a Division of ITT American Electric Corporation, and Sturdy Lantern Manufacturing Company, all nonresident corporations, filed an involuntary petition in bankruptcy seeking to have the debtor, Acorn Electric Supply, Inc., adjudicated bankrupt. It is alleged that on November 22, 1971, an act of bankruptcy was committed in that the debtor transferred certain of its property consisting of a check to one of its creditors, Moore Business Forms, Inc., in payment of an antecedent debt, while the alleged bankrupt was insolvent. The alleged effect of this transfer was to enable said Moore Business Forms, Inc., to obtain a greater percentage of its debt than some other creditors of Acorn Electric Supply, Inc., of the same class.

On January 21, 1972, counsel for the petitioning creditors requested the United States Marshal to hold up service of the subpoena to the alleged bankrupt. On February 3, 1972, counsel filed a motion for an extension of time for service of an alias subpoena, and it was so ordered by the Court on that date. The debtor answered and moved for a judg-

ment on the pleadings on the ground that the petitioning creditors are estopped from setting up the payment of an antecedent debt as an act of bankruptcy, in that the attorneys and agents for the petitioning creditors procured the alleged act of bankruptcy while serving as attorneys and agents for Moore Business Forms, Inc., and, at the same time, representing the three creditors who have now filed this involuntary petition in bankruptcy.

■■ Prior to the Bankruptcy Act of 1938, the doctrine that a creditor whose claim is within the terms of 59b [1] might be precluded from being a petitioning creditor was nowhere expressly sanctioned by the Act or the General Orders. The doctrine arose from cases, generally under a loose theory of estoppel, which relied on the concepts of waiver, election of remedies, and the legal principle *volenti non fit injuria.* Then subdivision *h* was added which provides:

"A creditor shall not be estopped to act as a petitioning creditor because he participated in any prior matter or judicial proceeding, having for its purpose the adjustment or settlement of the affairs of the debtor or the liq-

uidation of his property, or to allege such prior matter or proceeding as an act of bankruptcy, unless he has consented thereto in writing with knowledge of the facts, if any, which would be a bar to the discharge of the debtor under this [Act]."

Yet it should be noted that this subdivision is framed negatively, and the courts remain at liberty to follow, expand or restrict former case law on estoppel and other related doctrines. Furthermore, the conduct of the petitioning creditors in this matter does not fall under the purview of subdivision *h*. Thus, this Court recognizes the general principle that a creditor, who directly or indirectly, participates in or causes the act of bankruptcy, cannot be a petitioning creditor.[2] He is precluded really by the principle, *volenti non fit injuria,*[3] as opposed to various doctrines of estoppel.

Section 60(a) of the Bankruptcy Act, which defines preferential transfers, deals with transfers by a debtor while insolvent and within four months "before the filing" of the petition which initiates proceedings against him under the Act.[4] It has been generally held that a creditor cannot become a petitioner if he has consented to, participated

---

1. Section 59b expressly provides that only "creditors who have provable claims" may file an involuntary petition against the debtor. Three or more creditors may file an involuntary petition, provided that their claims aggregate to the amount of $500.00 or more, in excess of any securities held by them. See: Collier on Bankruptcy, 14th Ed., Vol. 3, p. 597.

2. A creditor cannot become a petitioner on any one of the following acts of bankruptcy if he consented to, participated in, or secured the commission of any of the following alleged acts of bankruptcy: (1) fraudulent transfer, concealment or removal; (2) preferential transfer; (3) lien through legal proceedings; (4) general assignment; (5) appointment of non-bankruptcy receiver or trustee. One principal exception is participation in the sixth act of bankruptcy (written admission by a person of his inability to pay his debts and his willingness to be adjudged a bankrupt). See: Collier on Bankruptcy, 14th Ed., Vol. 3, p. 681.

3. A maxim meaning literally: "No one can enforce a right arising out of a transaction which he has voluntarily assented to." It should be noted that although mere knowledge of an impending wrongful act does not of itself amount to consent, knowledge may serve as evidence of consent. Bouvier's Law Dictionary, 3408 (8th Ed. 1914).

4. The present text of § 60(a) reads in part as follows: "A preference is a transfer * * * of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition initiating a proceeding under this [Act], the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class." 11 U.S.C.A. § 96.

in, or secured the commission of a preferential transfer. In re Lucey Mfg. Corporation, 9 F.2d 313 (2 Cir., 1925), dealt with a creditor who consented to preferential transfers to other creditors. Circuit Judge Learned Hand reasoned that in the instance of a preferential payment, a creditor is justified to act only because he has been wronged; "and if he has induced the debtor to make the payment, or even consented to it in advance, plainly it is not an injury and not a wrong." *Id.* at 314. *See also*: In re Freeman Cotting Coat Co., 212 F. 548 (D.Mass.1913). Judge Hand felt that such matters were not related to estoppel or the election of remedies, but that the maxim of *volenti non fit injuria* was definitely applicable.

■ Mr. Steingold, who is admittedly the agent and attorney-in-fact for the petitioners in this case,[5] also was representing Moore Business Forms, Inc., when the latter creditor sought after and received a preferential payment for an antecedent debt. There is no dispute on the facts that Steingold, Steingold & Friedman advised Moore Business Forms, Inc., to pursue the garnishment proceeding instituted on November 5, 1971, with payment of $459.87 having been received on November 22, 1971, from counsel for the alleged bankrupt who was then serving as an escrow agent to the extent of approximately $10,000.00, same being the balance of the proceeds of a fire loss sustained by the alleged bankrupt. The purpose of § 60(a) is to protect creditors from secret preferential liens and to secure equality of distribution of the assets among creditors of the same class. DeSanto v. Noto Lumber Company, 153 F.Supp. 801

(M.D.Pa.1957). In view of the fact that the Steingold firm was acting in the capacity as duly authorized agent for the petitioning creditors, it must be concluded that the garnishment proceeding was not secret and was known to the petitioning creditors in this matter.[6]

■ It is well established that creditors may be estopped by their own consent to an act from alleging it against their debtor as an act of bankruptcy to procure an adjudication. This has been upheld in both In re Weiss, 142 F. 279 (E.D.Pa.1905), which is factually the closest in point to our case, and in In re Taylor House Ass'n, 209 F. 924 (N.D.N.Y.1913), where Judge Ray stated: "It is true that a bad intention on the part of the petitioner will not defeat his right to file a petition in involuntary bankruptcy when an act of bankruptcy has been committed and such act was not procured or assented to by the petitioner. But a good intention will not justify a creditor in procuring his debtor to commit an act of bankruptcy and permit him thus to become a petitioner and allege such act as the basis of an adjudication." *Id.* at 931. *See also:* In re Maryanov, 20 F.2d 939 (E.D.N.Y.1927).

While not in the record other than by reference thereto in the brief filed by counsel for petitioning creditors, it is stated that this law firm received seven (7) additional claims for collection. The claim of Moore Business Forms, Inc., was first received. This was followed by the claim of Powell Electric Manufacturing Company, after which nine (9) claims were received from other creditors (including two from the other petitioning creditors), all prior to the alleged act of bankruptcy.

5. As of the date of the alleged act of bankruptcy, the attorneys for the petitioning creditors were then in possession of two executed powers of attorney authorizing the filing of an involuntary petition in bankruptcy. The claim of the third petitioning creditor was in the hands of the law firm, but the power of attorney was not executed by this creditor until eight (8) days after the alleged act of bankruptcy.

6. 11 U.S.C.A. § 1(11), defines a creditor as including "anyone who owns a debt, demand, or claim provable in bankruptcy, and may include his duly authorized agent, attorney, or proxy." Under this section of the Bankruptcy Act a creditor's agent may act as a qualified petitioning creditor in his own name. Shingleton v. Armour Boulevard Corporation, 107 F.2d 440 (8 Cir., 1939).

It is argued that, except for Section 3 of the Bankruptcy Act, a law firm representing a number of unsecured general creditors of an insolvent debtor should not be barred from protecting the interests of their clients by creating the second and third acts of bankruptcy. We must disagree with this conclusion. We do not feel that the addition of subsection (h) to Section 59 of the Bankruptcy Act supercedes the holding in In re Weiss, *supra,* which counsel for petitioning creditors tacitly concede is in point. Subsection (h) would not bar a creditor from participating as a petitioning creditor where the prior acts have "for its purpose the adjustment or settlement of the affairs of the debtor or the liquidation of his property." The act of bankruptcy alleged in the present case is the second act, namely, a preferential transfer. It is stated in Collier on Bankruptcy, 14th Ed., § 59.39, p. 682, as follows:

"Clearly the rule of these cases which deal with the first, second and third acts of bankruptcy is not affected by subdivision (h), which only precludes the raising of an estoppel against a petitioning creditor because of his participation in a 'prior matter or judicial proceeding, having for its purpose the adjustment or settlement of the affairs of the debtor or the liquidation of his property.' The fourth and fifth acts of bankruptcy, on the other hand, do pertain to adjustment or liquidation proceedings."

*Collier* goes further and qualifies the statement contained in the last sentence quoted *supra,* but this is immaterial to the facts before the court.

The petitioning creditors rely upon In re Thomas, 211 F.Supp. 187 (D.Col., 1962), affirmed per curiam, Thomas v. Youngstown Sheet & Tube Co., 327 F.2d 667, cert. denied 379 U.S. 827, 85 S.Ct. 55, 13 L.Ed.2d 36. The opinion of the district court recites all the facts and conclusions. We find no fault with this decision. The involuntary petition alleged *two* separate acts of bankruptcy. In one act, the creditor did participate; in the other he did not. The district court agreed that, as to the act of bankruptcy in which the petitioning creditor participated, such creditor was barred by reason of consent as expressed in the maxim *volenti non fit injuria* but, as to the *other* act of bankruptcy in which the same creditor did *not* participate, such creditor was *not* barred and the involuntary petition was allowed to stand. In the present case involving *one* alleged act of bankruptcy, the petitioning creditors, acting directly and indirectly through their attorneys and agents, in reality brought about the commission of the act of bankruptcy. These petitioning creditors are not foreclosed from relying upon any other or subsequent act of bankruptcy committed by the debtor in which act the creditor did not participate.

In the final analysis the single question presented is whether petitioning creditors are bound by the knowledge and acts of their attorneys. In the bankruptcy court and elsewhere, corporations act and speak through their authorized agents and attorneys. Indeed, in the bankruptcy court especially, corporate creditors seldom appear in any official capacity other than through an attorney. We do not condemn any attorney who attempts to effect the collection of a debt placed in his hands by a client and, in this case, the attorneys owed primary allegiance to Moore Business Forms, Inc., whose claim was first received. Nor is there any ethical problem presented in receiving any other claims against the same debtor. Nevertheless, the prohibition imposed by the decided cases apparently forecloses the direct or indirect participation of an act of bankruptcy induced by the action of the attorney at a time when he represents several creditors, some of whom thereafter appear as petitioning creditors in an involuntary proceeding.

For the reasons heretofore stated, it is ordered that the motion to dismiss the involuntary petition be, and it hereby is, sustained, and this action is dismissed with costs assessed against the petitioning creditors.