In the Matter of DeGELLEKE CO., INC., a Wisconsin Corporation, alleged bankrupt.

No. 74–B–430.

United States District Court, E. D. Wisconsin.

April 23, 1976.

E. H. Snyder, Milwaukee, Wis., for alleged bankrupt.

Kohner, Mann & Kailas, Milwaukee, Wis., for appellants.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

This is an appeal from an order of the bankruptcy court dismissing a petition to have DeGelleke Co., Inc., involuntarily adjudicated a bankrupt. For the reasons set forth below, the decision of the bankruptcy judge must be affirmed and the petition dismissed.

The operative facts in this case are not in dispute. On January 24, 1974, Anchor Coatings, Inc. ("Anchor"), a petitioner in the bankruptcy court but not one of the appellants presently before this court, obtained a judgment in the Circuit Court for Milwaukee County against DeGelleke Co., Inc. ("DeGelleke"). Five days later Anchor filed a copy of the judgment in the Circuit Court for Waukesha County. An order to execute on the judgment was duly given to the sheriff of Waukesha County on February 7, 1974, and returned completely unsatisfied. Anchor thereupon commenced an action in the Waukesha Circuit Court on February 26, 1974, petitioning for an order to issue directing DeGelleke to show cause why a state court receiver should not be appointed to take over DeGelleke's financial affairs. The matter came on for hearing March 4, 1974, and on Anchor's motion, an order was entered by the Waukesha Circuit Court appointing a receiver. No formal appearance was made on behalf of DeGelleke at the March 4 proceedings.

Within an hour after the entry of the Waukesha Circuit Court's order on the morning of March 4, 1974, the petition in the present case was filed in the bankruptcy court. Anchor, along with Midland Plastics, Inc. ("Midland"), Keene Building Products Corp. ("Keene"), and Flangeklamp Corp. ("Flangeklamp"), all appearing by the same attorneys who had represented Anchor in the previous proceedings, prayed to have DeGelleke declared an involuntary bankrupt under § 59(b) of the Bankruptcy Act, 11 U.S.C. § 95(b). In order for the petition to meet the requirement established for involuntary bankruptcy proceedings—that the alleged bankrupt committed some act of bankruptcy—see Rule 104(a), Bankruptcy Rules (1975), and Official Form No. 9, Official Bankruptcy Forms, paragraph 4 of the petition stated:

# 1322

"4. Within the four months preceding the filing of this petition, the alleged bankrupt committed an act of bankruptcy in that he did on March 4, 1974, suffered, while insolvent, involuntary the appointment of a receiver to take charge of his property by Waukesha County Circuit Judge William E. Gramling, in Case No. 32391."

On March 15, 1974, petitioners obtained an order from the bankruptcy court demanding that DeGelleke show cause why a receiver should not be appointed by the bankruptcy judge to take immediate possession of the corporate assets. On March 18, DeGelleke responded by filing a motion to dismiss the petition, ostensibly on the ground that the petition was not filed in good faith in violation of § 146 of the Bankruptcy Act, 11 U.S.C. § 546. Briefs were filed and the matter came on for hearing on March 26, 1974. On March 29, 1974, the bankruptcy judge entered an order dismissing the petition, holding that Anchor and its attorneys were estopped from bringing the involuntary petition because of their active participation in the act of bankruptcy of DeGelleke: the creation of the receivership in Waukesha Circuit Court.[1] This appeal followed and is presently before the court on briefs filed by the parties and oral argument had January 13, 1976.

## I.

In support of its position that the bankruptcy court's order of dismissal was erroneous, petitioners make the initial contention that DeGelleke's motion to dismiss was an "improper vehicle" to use to attack the sufficiency of the petition. Thus, the argument runs, since the issue of estoppel must be pleaded as an affirmative defense in an *answer* to the petition, the matter was not properly before the bankruptcy court on the motion to dismiss.

It is true that at one time heavy emphasis in bankruptcy proceedings was placed on the *form* of the papers filed by the parties. Thus, certain issues, such as disqualification of a petitioner in involuntary bankruptcy, have been held not to be properly before a court when raised by a motion instead of a responsive pleading. *In Re Interstate Oil Corp.,* 63 F.2d 674, 676 (9th Cir. 1933). The current trend, however, is to move away from such formalistic distinctions. For example, Rule 12 of the Federal Rules of Civil Procedure, which has been relied upon by courts in prescribing the method of making an objection or defense to a petition in bankruptcy,[2] has been explicitly incorporated by the new Federal Bankruptcy Rules. See Rule 112, Bankruptcy Rules (1975).

In the record before this court on appeal, it appears that in addition to the motion papers and briefs, affidavits were submitted by DeGelleke in support of its motion to dismiss and not excluded by the bankruptcy judge in reaching his decision. Thus, the proceedings below closely resembled the process under Rule 12(b), Federal Rules of Civil Procedure, whereby a district court may on a motion to dismiss consider additional factual material and treat the motion as one for summary judgment. The

---

1. The exact language of the bankruptcy court's decision was that "the involuntary petition in bankruptcy to have DE GELLEKE CO., INC. adjudicated a bankrupt and the motion to appoint a receiver to take immediate possession and control of the assets of said Alleged Bankrupt and all proceedings based thereon be and the same hereby are dismissed on the ground that said KOHNER, MANN & KAILAS, its partners and associates and ANCHOR COATINGS, INC., one of the petitioners herein and each of them, are estopped, disqualified and precluded from participating or joining in said involuntary petition and motion to appoint a receiver herein by reason of their having created and participated in the act of bankruptcy upon which said involuntary petition and motion is based; to-wit the appointment of said receiver by the Circuit Court of Waukesha County, Wisconsin."

2. *Fada of New York, Inc. v. Organization Service Co., Inc.,* 125 F.2d 120 (2d Cir. 1942); *In Re McDougald,* 17 F.R.D. 2, 5 (W.D.Ark.1955); *Tatum v. Acadian Production Corp. of La.,* 35 F.Supp. 40, 50 (E.D.La.1940).

bankruptcy judge's usage of an estoppel theory, rather than the "bad faith" notion initially relied upon by DeGelleke (which would have necessitated the taking of evidence on the question of petitioners' alleged bad faith),[3] merely underscores the conclusion that in substance the proceedings below were analogous to those provided for in Rule 12(b). Thus, without deciding whether in all bankruptcy petitions the issues raised by the alleged bankrupt may be raised by motion rather than responsive pleading, I hold that under the circumstances of this case the bankruptcy judge properly considered the sufficiency of the petition on DeGelleke's motion to dismiss. Thus, petitioner's position on this point is rejected.

## II.

The petitioners further argue that since a state court receiver had been appointed, DeGelleke itself has no separate, cognizable interest in opposing the petition filed in the bankruptcy court. In other words, petitioners' position is that DeGelleke lacks standing. Under the facts disclosed in this record and in oral argument, the Court must hold otherwise.

■ There is no doubt that Anchor, Midland, Keene, and Flangeklamp were engaged in a strategy to bring DeGelleke into federal bankruptcy court on an involuntary petition. Counsel for the petitioners admitted as much during oral argument on this appeal.[4] Federal law, however, clearly prevents a creditor from becoming a petitioner in bankruptcy if that creditor affirmatively participated in, consented to, or secured the commission of the appointment of a non-bankruptcy receiver, and that appointment is the act of bankruptcy relied upon in the petition. *In Re Gold Run Mining & Tunnel Co.,* 200 F. 162 (D.C.Colo.1912); *Woolford v. Diamond State Steel Co.,* 138 F. 582 (D.C. Del.1905); *Lowenstein v. Henry McShane Mfg. Co.,* 130 F. 1007 (D.C.Md.1904). See generally 3 Collier on Bankruptcy ¶ 59.39, at 680–684 (14th ed. 1975). The underlying rationale for the rule has been variously expressed as estoppel,[5] election of remedies,[6] and *volenti non fit injuria.*[7] It is apparent, however, that no matter which rationale is subscribed to, the natural and traditional party to raise the matter is the alleged bankrupt who, it can be inferred, enjoys some concomitant right to be free from parallel proceedings begun by the same creditor where one proceeding is dependent on the other.

■ The Court is not impressed with petitioners' argument that since a state court receiver had been appointed, the alleged bankrupt lost its ability to independently challenge the sufficiency of the petition in bankruptcy court. There is nothing in the record before this Court to indicate that efforts were made to serve the receiver in the bankruptcy proceedings, even though he was known to petitioners. No appearance was ever made on behalf of the receiver in this action. Moreover, during oral argu-

---

**3.** At this point it should, of course, be pointed out that the "bad faith" provision of § 146 of the Bankruptcy Act, 11 U.S.C. § 546, besides raising factual issues which would be likely to prevent a case from being disposed of on motion for summary judgment, applies only to corporate reorganizations governed by Chapter 10 of the Bankruptcy Act, 11 U.S.C. §§ 501–676, and not the involuntary petition that is before the court. See § 101 Bankruptcy Act, 11 U.S.C. § 501.

**4.** In fact, counsel for the petitioners conceded at oral argument that the papers ultimately filed in the bankruptcy court in support of the involuntary petition were prepared before the Waukesha Circuit Court placed DeGelleke in receivership. In view of the fact that the act of bankruptcy these petitioners alleged was the creation of a receivership by the state court, the strategy involved is readily apparent.

**5.** *Simonson v. Sinsheimer,* 95 F. 948 (6th Cir. 1899); *In Re C. Moench & Sons Co.,* 123 F. 965 (D.C.N.Y.1903), aff'd 130 F. 685 (2d Cir. 1904).

**6.** See *In Re Thomas,* 211 F.Supp. 187 (D.C. Colo.1962), aff'd *sub nom. Thomas v. Youngstown Sheet & Tube Co.,* 327 F.2d 667 (10th Cir. 1964), cert. denied 379 U.S. 827, 85 S.Ct. 55, 13 L.Ed.2d 36 (1964).

**7.** *In Re Lucey Mfg. Corp.,* 9 F.2d 313 (2d Cir. 1925).

ment it was disclosed that the receiver initially appointed was totally inactive, and that after the bankruptcy judge made his ruling in this matter, these petitioners caused a new receiver to be appointed by the state court. In essence, the receiver was a necessary part of the strategy of bringing a successful involuntary petition in bankruptcy court, and was used as such. Under these circumstances it would be unreasonable to expect the receiver to raise the important issues presently before the court.

The alleged bankrupt has been the traditional party to raise the issue presently before the court. *Lowenstein v. Henry McShane Mfg. Co.,* supra; *Woolford v. Diamond State Steel Co.,* supra.[8] Moreover, on this record, I find that the alleged bankrupt has a personal stake in the issues raised sufficient to insure the "concrete adverseness which sharpens the presentation of issues," *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663, 678 (1962), and that the interest DeGelleke seeks to protect by its motion is arguably within the zone of interests sought to be protected by the substantive bankruptcy law discussed above. See *Jenkins v. McKeithen,* 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). Cf. *Association of Data Processing Services Organizations, Inc. v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). Thus, DeGelleke does have standing to raise the issues presently before the Court, and petitioners' arguments to the contrary are rejected.

### III.

Petitioners' final argument is that the bankruptcy court erred in barring Kohner, Mann & Kailas, counsel for Anchor, as well as Anchor, from bringing the involuntary petition in bankruptcy.[9] The effect of the bankruptcy court's order was to dismiss the involuntary petition of Midland, Keene, and Flangeklamp.

Petitioners' attorneys maintain that § 59(h) of the Bankruptcy Act, 11 U.S.C. § 95(h), permits the action that they took in this case, which section provides:

"(h) A creditor shall not be estopped to act as a petitioning creditor because he participated in any prior matter or judicial proceeding, having for its purpose the adjustment or settlement of the affairs of the debtor or the liquidation of his property, or to allege such prior matter or proceeding as an act of bankruptcy, unless he has consented thereto in writing with knowledge of the facts, if any, which would be a bar to the discharge of the debtor under this title. * * *"

It has been widely noted that the section is framed negatively, leaving undefined the precise prerequisites for an estoppel and freeing the courts to decide the question on a case-by-case basis. *Queen City Shoe Mfg. Corp. v. Commonwealth Last Co.,* 134 F.2d 422 (1st Cir. 1943); *In Re Acorn Electric Supply, Inc.,* 339 F.Supp. 785 (E.D.Va.1972); 3 Collier on Bankruptcy ¶ 59.36 at 665 (14th ed. 1975). Moreover, the conduct of these petitioners does not fall within the express terms of § 59(h), which makes clear only that mere participation in a nonbankruptcy liquidation or adjustment proceeding, without a written consent given with knowledge of the underlying facts, will not estop the participant. Section 59(h) does not affect the general rule that "a creditor who participates, directly or indirectly, in the *act of* bankruptcy charged in the petition cannot normally be a petitioning creditor." 3 Collier on Bankruptcy ¶ 59.36 at 666 (14th ed. 1975). See also *In Re Acorn Electric Supply, Inc.,* supra, at 786. The invocation by petitioners of § 59(h) is plainly unavailing.

It is admitted that the same law firm represented all four creditors at every relevant stage in these proceedings. In fact, all papers filed by the creditors in both the state and federal actions, including the peti-

---

8. A receiver appointed by the state court, if he is so inclined, is certainly competent to resist an involuntary petition for adjudication as a bankrupt. *In Re Gold Run Mining & Tunnel Co.,* 200 F. 162 (D.Colo.1912).

9. For the text of the bankruptcy judge's order, see note 1, supra.

tion below, were filed by counsel with the sworn verification that they were authorized by the petitioners to do so. At a minimum, it must be inferred that since counsel was acting as the authorized agent for all petitioners, the creation of the state court receivership was generally known to all petitioning creditors.[10]

The important question, of course, is whether the participation of Anchor in the act of bankruptcy can be imputed to the other petitioners by virtue of the fact that they all shared the same counsel. I hold that it can. To decide otherwise would effectively undercut the well-settled rule in this area. In bankruptcy proceedings, where many creditors are frequently represented by the same attorney and seldom appear in any official capacity other than through an attorney, it is a relatively simple matter for counsel to use one creditor-client to create the act of bankruptcy which allows the others to file an involuntary petition. This type of manipulation is exactly what took place in the case at bar. It accomplished a result which, in substance, is prohibited by the decided cases. See, e. g., *In Re Acorn Electric Supply, Inc.,* supra.[11] Therefore, the order below was entirely necessary and appropriate to effectuate the estoppel required by law.

IT IS THEREFORE ORDERED that the order of the bankruptcy court in this matter be and it hereby is affirmed, and the involuntary petition and all related proceedings in the bankruptcy court are dismissed.

10. The Bankruptcy Act defines the term "creditor" as including "anyone who owns a debt, demand, or claim provable in bankruptcy, and may include his duly authorized agent, attorney, or proxy." 11 U.S.C. § 1(11).

11. In affirming the bankruptcy court here, I join in the observations of Chief Judge Hoffman in *In Re Acorn Electric Supply, Inc.,* supra, at 788:
   " * * * We do not condemn any attorney who attempts to effect the collection of a

debt placed in his hands by a client * * *. Nor is there any ethical problem presented in receiving any other claims against the same debtor. Nevertheless, the prohibition imposed by the decided cases apparently forecloses the direct or indirect participation of an act of bankruptcy induced by the action of the attorney at a time when he represents several creditors, some of whom thereafter appear as petitioning creditors in an involuntary proceeding."