In the Matter of WIN–SUM SPORTS,
INC. fka: Sports, Inc.,
Alleged Debtor.

Bankruptcy No. 2–81–00228.

United States Bankruptcy Court,
D. Connecticut.

Sept. 23, 1981.

Bruce Beck, Manchester, Conn., for alleged debtor.

Christopher Noble, Hartford, Conn., for petitioning creditors.

## MEMORANDUM AND ORDER

ROBERT L. KRECHEVSKY, Bankruptcy Judge.

On March 9, 1981, an involuntary Chapter 11 petition was filed pursuant to 11 U.S.C. § 303(h)(1)[1] against Win-Sum Sports, Inc. (Win-Sum) by three petitioning creditors—Nordica/RNC, Inc., Rossignol Ski Co., and Salomon/North America, Inc. An accompanying application for an immediate appointment of an interim trustee was denied. Win-Sum moved to dismiss the involuntary petition and to disqualify the petitioner's attorney on grounds of conflict of interest. When both motions were denied, Win-Sum attempted an appeal of the ruling concerning disqualification of the attorney but its application for leave to appeal was denied by the district court on April 29, 1981. Win-Sum then filed an answer generally denying the essential allegations of the petition and pleaded as a special defense that the petitioners are "estopped from claiming that the debtor is in default". Win-Sum also filed a motion to dismiss alleging that the involuntary petition had not been brought by the real party in interest pursuant to F.R.C.P. 17(a) (B.R. 717) because the petition was filed at the request of Arthur W. Benson, Jr., a Win-Sum stockholder. This motion was denied on May 26, 1981. After extensive discovery by both sides which required rulings by the court on several occasions, the trial commenced on July 28, 1981 and ended on August 13, 1981. During these hearings, Win-Sum filed a motion to dismiss the case pursuant to 11 U.S.C. § 305(a)(1) on grounds that "the interest of creditors and the debtor would be better served by such dismissal . . .[2]." At the conclusion of the trial, the parties agreed that the court would rule on both the § 303 involuntary petition and the § 305 motion to dismiss based on the entire record by taking judicial notice of all prior proceedings.

## BACKGROUND

Win-Sum, the alleged debtor, is a corporation operating a retail sporting goods store. Prior to the time of its incorporation in March, 1979, the same business had been conducted for a number of years as a partnership by William Paluska, Jr. and Benson. Upon incorporation, each partner became a 50% shareholder of the corporation, with Benson being elected a director and president, and Paluska becoming vice-president, secretary and treasurer as well as a director. Benson resigned his offices as president and director sometime later in 1979, however, and never regained these positions. Due to a lack of snow, the winter of 1979–1980 was a disastrous one for winter sports in New England. Win-Sum experienced financial difficulties at this time and became unable to pay its suppliers as their invoices fell due during 1980. The winter season of 1980–1981 was only marginally

---

1. *11 U.S.C. § 303(h)(1).*

    .    .    .    .    .

(h) If the petition is not timely controverted, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed. Otherwise, after trial, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed, only if—

    (1) the debtor is generally not paying such debtor's debts as such debts become due . . . .

2. *11 U.S.C. § 305. Abstention.*

(a) The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if—

    (1) the interests of creditors and the debtor would be better served by such dismissal or suspension . . . .

better and unpaid bills accumulated. During this same period, Paluska and Benson were negotiating for Benson to buy out Paluska's share of the business. The terms of the buy out included repayment of Paluska's loans of $60,000.00 to the corporation and payment of $30,000.00 for his shares of stock. A contract of sale was entered into in April, 1980, under which Paluska received a payment of $20,000.00 on his loans to the corporation. Benson furnished the funds for this payment to Win-Sum which, in turn, issued its check to Paluska.

Prior to September, 1980, either Paluska, or Paluska together with Benson, operated the store. During the period from September, 1980 to February, 1981, however, Benson was the sole manager of the business because Paluska, by agreement with Benson, left the store although he continued to draw his salary. When the buy out negotiations finally broke down early in February, 1981, Benson retained Attorney Christopher Noble. On February 20, 1981, Attorney Noble, who had no prior connection with Win-Sum, filed a voluntary chapter 11 petition on behalf of Win-Sum in this court. After trial, the petition was dismissed on March 3, 1981 as not having been properly authorized by officers or directors of the corporation. Six days later, on March 9, 1981, Attorney Noble, on behalf of the three petitioning creditors, filed the present involuntary petition. Benson, testifying on behalf of the petitioning creditors, stated that while the business normally had a monthly arrearage of $30,000.00 of supplier debts and $18,000.00 of other unpaid expenses, Win-Sum had incurred about $75,000.00 of overdue debts on March 9, 1981.[3] Two of the three petitioning creditors testified that neither of them would have brought the involuntary petition had not each received a written indemnity agreement from Benson. This agreement provided that Benson would bear all costs of bringing the petition, including attorney's fees, and would hold these creditors harmless from any loss or damage should the

petition be dismissed. As the result of the filing of the first voluntary petition, Win-Sum's bank, The Vernon National Bank, set off approximately $12,500.00 in funds which Win-Sum had on deposit in its checking account, thereby causing approximately $9,000.00 in checks drawn by Win-Sum to be dishonored. Prior to the filing of the involuntary petition, Win-Sum was negotiating for another loan from The Vernon National Bank, the proceeds of which were to be used to make payments to trade creditors. The filing of the involuntary petition apparently aborted the loan. At the time of the trial on the involuntary petition, except for the three petitioners' debts, Win-Sum had paid or made acceptable arrangements to pay all debts claimed by the petitioners as past due on March 9, 1981. This was accomplished through a $20,000.00 loan from the Manchester Community Bank, secured by Win-Sum's merchandise inventory and Paluska's personal assets. Paluska obtained additional cash for Win-Sum's account by conducting several markdown inventory clearance sales.

## DISCUSSION

### I.

Under § 303(h)(1), the petitioners in an involuntary case bear the burden of proving that an alleged debtor is "generally not paying such debtor's debts as such debts become due".[4] This test, the equity insolvency test, represents the most significant departure from prior law concerning grounds for involuntary bankruptcy. House Report No. 95–595, 95th Cong., 1st Sess. (1977) 323–324; *See* Senate Report No. 95–989, 95th Cong., 2d Sess. (1978) 34, U.S.Code Cong. & Admin.News 1978, p. 5787. While Congress did not make explicit what "generally not paying" under § 303(h)(1) means, courts have considered such factors as the number of creditors an alleged debtor has and the amount of debts not being paid in construing the "generally

---

**3.** Although the court is aware there are existing stockholder loans, no evidence was submitted by Benson as to their status.

**4.** *See* note 1 *supra.*

not paying" standard. Since the standard is a flexible one, all circumstances surrounding the payment practices of the alleged debtor should be explored thoroughly. As one court has stated:

> The new test for involuntary petitions was adopted not to restrict and limit the involuntary process but was included to allow more flexibility.... [T]he court believes that generally not paying debts includes regularly missing a significant number of payments which are significant in amount in relation to the size of the debtor's operation. Where the debtor has few creditors the number which will be significant will be fewer than where the debtor has a large number of creditors. Also, the amount of debts not being paid is important. If the amounts of missed payments are not substantial in comparison to the magnitude of the debtor's operation, involuntary relief would be improper.

*In re All Media Properties, Inc.*, 5 B.R. 126, 142–143, 6 B.C.D. 586, 593–94 (Bkrtcy., S.D. Tex., 1980). *See also In re Reed*, 11 B.R. 755 (Bkrtcy., S.D.W.Va.1981); *In re Trans-High Corp.*, 3 B.R. 1, 6 B.C.D. 213 (Bkrtcy., S.D.N.Y.1980); *In re Hill*, 5 B.R. 79, 6 B.C.D. 659 (Bkrtcy., D.Minn.1980). *See generally* Honsberger, *Failure to Pay One's Debts Generally As They Become Due: The Experience of France and Canada*, 54 Am. Bankr.L.J. 153 (1980).

■ For purposes of granting or denying relief under § 303(h)(1), the alleged debtor's payment activity must be examined at the time of the filing of the petition. *In re All Media Properties, supra* 5 B.R. at 144, 6 B.C.D. at 595. While post-petition payments of delinquent accounts may be material in some circumstances to the issue of whether relief should be granted under § 303(h)(1), post-petition payments ordinarily indicate a last ditch effort on the part of the alleged debtor to avoid bankruptcy proceedings. *In re All Media Properties, supra* at 144, 6 B.C.D. at 595. Of course, post-petition payments to creditors may be germane to other issues in a particular proceeding.

■ Win-Sum contends that the petitioning creditors are estopped from claiming that Win-Sum is not generally paying its debts. Win-Sum bases its argument on the relationship between the petitioning creditors and Benson, and particularly refers to Benson's agreement to indemnify the petitioners from any losses resulting from the dismissal of the involuntary petition and for attorney's fees. Win-Sum argues that the indemnity agreement induced the filing of the bankruptcy petition and this estops petitioners from bringing this involuntary proceeding. In support of its position, Win-Sum cites four cases under the Bankruptcy Act of 1898 which hold that creditors who induce an act of bankruptcy later claimed to require an adjudication in an involuntary proceeding are precluded from being petitioning creditors. *Dinerman v. Bowley & Travers, Inc.*, 301 F.2d 464 (2d Cir. 1962); *In re DeGelleke Co., Inc.*, 411 F.Supp. 1320 (E.D.Wis.1976); *In re Acorn Electric Supply, Inc.*, 339 F.Supp. 785 (E.D.Va.1972); *In re Wilshire Frocks, Inc.*, 46 F.Supp. 377 (S.D.N.Y.1942). The petitioning creditors in the present case do not stand on the same footing, however. The Bankruptcy Code has eliminated the traditional "acts of bankruptcy" as a basis for involuntary relief and substituted, with one other ground, the "generally not paying such debtor's debts as such debts become due" standard. § 303(h)(1). Notwithstanding Benson's indemnity agreement, the petitioning creditors had the burden of showing that Win-Sum was generally unable to meet its obligations as they fell due. Hence, unlike the cases cited by Win-Sum, the petitioning creditors have not participated in inducing any ground for the granting of relief in an involuntary case.

■ Win-Sum further argues that involuntary relief should be denied because the petitioning creditors never pressed for payment of these debts nor sent any notices of delinquency. Consequently, Win-Sum says, the debts owed to the petitioning creditors were not "due" within the meaning of § 303(h)(1). Win-Sum's argument on this point is not well taken. A debt is no less

due because a creditor has seen fit for a time to forebear in collecting it. The Bankruptcy Code does not obligate a creditor to press a debtor for payment of the creditor's own debt as an antecedent condition to filing an involuntary petition. To hold otherwise could unnecessarily chill bona fide attempts on the part of creditors to aid a financially troubled debtor. Further, § 303(b) refers to the commencement of an involuntary case by the filing of a petition by three entities, each of which is the "holder of a claim". "Claim" is defined in 11 U.S.C. § 101(4) as a "right to payment, whether or not such right is . . . matured, unmatured . . .". Thus, even if these three creditors' claims were not "due" as alleged by Win-Sum, such fact would not prohibit them from being petitioners.

■ At the time of the filing of the involuntary petition on March 9, 1981, Win-Sum had twenty-six past due accounts payable over $50.00. In total, Win-Sum owed $74,436.57 to these twenty-six creditors, double its normal indebtedness. Most of the debts were three months old; some of the oldest were past due for over a year.[5] Rossignol and Nordica were owed $4,457.02 and $2,623.40, respectively, most of which had been due for ninety days. Salomon/NA was owed $8,915.54, the greater part of which had been due for 150 days. Benson further testified to receiving dunning phone calls from some unnamed creditors concerning their past due debts. Considering both the number of debts past due, their amounts, and the usual payment methods of Win-Sum, I conclude that the petitioning creditors have met their burden of proving that Win-Sum was not generally paying its debts on March 9, 1981 as those debts became due.

## II.

■ Win-Sum contends that if the court finds that the basis for an involuntary case is established, the court should dismiss the case pursuant to § 305(a)(1)[6] because the interests of Win-Sum and its creditors would be better served by such a dismissal. Section 305(a)(1) of the Bankruptcy Code is new. Legislative history states that the section is designed to allow out-of-court insolvency arrangements to continue if those arrangements are in the best interests of all concerned and the petition is filed by "recalcitrant creditors".

> This section recognizes that there are cases in which it would be appropriate for the court to decline jurisdiction. Abstention under this section, however, is of jurisdiction over the entire case. . . . The court may dismiss or suspend under the first paragraph, for example, if an arrangement is being worked out by the creditors and the debtor out of court, there is no prejudice to the rights of creditors in that arrangement, and an insolvency case has been commenced by a few recalcitrant creditors to provide a basis for future threats to extract full payment.

House Report No. 95–595, 95th Cong., 1st Sess. (1977) 325; Senate Report No. 95–989, 95th Cong., 2d Sess. (1978) 35, U.S.Code Cong. & Admin.News 1978, p. 6281. Since a dismissal pursuant to § 305(a) is not reviewable by appeal or otherwise,[7] this court will not grant such a dismissal lightly.[8]

---

5. In *In re All Media Properties, Inc., supra*, the court held that debts are past due 30 days after billing:

> Where there has been a showing that a debt has remained unpaid for more than 30 days after it has been billed it is sufficient to establish that the debt has not been paid as it becomes due. The reason for this is that ordinarily this is the way that business is done . . . . A creditor should not be expected to extend credit to a debtor by having to wait for prolonged periods for payment, unless that was the agreement of the parties. The debtor can always show that under the

agreement payment was not due until some later time.
>
> 5 B.R. at 145, 6 B.C.D. at 595.

6. *See* note 2 *supra*.

7. Section 305(c) states that "[a]n order under subsection (a) of this section dismissing a case or suspending all proceedings in a case, or a decision not so to dismiss or suspend, is not reviewable by appeal or otherwise".

8. One court has already commented on the possible dangers of overworking this section of the Code:

I believe that for abstention purposes pursuant to § 305(a)(1), the Win-Sum post-petition payments and the motivation of the petitioners become pertinent and significant. Paluska testified that Win-Sum became current on many of its old accounts payable after the filing of the present petition. It obtained a $20,000.00 loan from The Manchester Community Bank, the proceeds of which were used to pay trade creditors,[9] and made arrangements with other creditors for extensions of time to pay their debts. Moreover, the appearing petitioning creditors admitted at trial that they would not have retained Benson's attorney and filed the petition but for the indemnity agreement received from Benson. Nordica and Rossignol credit managers readily acknowledged that they never demanded payment of their debts from Win-Sum prior to bringing the involuntary petition, that they never advised Win-Sum they were dissatisfied with the payment schedule in effect, and that their normal credit practices would have been first to call Win-Sum to discuss an alternate payment arrangement if they were dissatisfied. In fact, Nordica and Rossignol acknowledged receiving a total of $17,623.40 and $5,267.01, respectively, on past due accounts from Win-Sum within sixty days of the filing of the voluntary petition. The Rossignol credit manager called Win-Sum an "excellent account" and he stated he was satisfied with the periodic payments being received from Win-Sum until Benson filed the voluntary petition in February, 1981. The brief filed on behalf of the petitioning creditors states that they refused to accept further paydown on their debts immediately prior to March 9, 1981 when offered by Win-Sum because it "would have been an obvious preference". This is a curious assertion in view of their previous acceptance of monies, and there is certainly nothing improper or illegal in creditors accepting payments on their debts. The involuntary petition does not seek to liquidate Win-Sum with immediate distribution of its assets to creditors. Rather, it seeks to have Win-Sum continue to operate, but under a trustee to displace Paluska as management. The indemnity agreement signed by Benson, without which there would have been no petitioning creditors and which put Benson's own business into bankruptcy, suggests the real purpose of these proceedings. The court is convinced that Benson is seeking to use the bankruptcy court as an alternate approach to state court procedures to resolve intra-company management and stockholder problems. The court concludes that Benson and the petitioning creditors are comparable to the "recalcitrant" creditor described in the legislative history of § 305(a)(1).

A contention of the petitioners made in their brief, which gives the court pause in considering dismissal of the case, is that the payment of $20,000.00 to Paluska in April, 1980, is a preference, and it is in the best interests of creditors, therefore, not to dismiss the case. However, even assuming that Win-Sum was insolvent in April, 1980, and that Paluska had reason to know this, Benson merely substituted himself as a creditor of the corporation for the $20,000.00 which he caused the corporation to pay Paluska. It is obvious that Benson put $20,000.00 into the corporation in order to

To be sure, it could be said that dismissal would be in the interests of creditors and the debtor in many of the proceedings commenced under the Bankruptcy Code; this Court could dispose of much of its calendar if its discretion was unbridled. There is an inherent risk to our system of jurisprudence in any Act of Congress which gives the court such broad powers to refuse jurisdiction over a case. This risk is compounded by the finality and non-appealability of an order entered under this section. Indeed, by giving an example of a situation in which abstention or dismissal would be appropriate, Congress has indicated that it intended section 305(a) dismissals to be the exception rather than a rule.

*In re Luftek, Inc.*, 6 B.R. 539, 548, 6 B.C.D. 1083, 1088–89 (Bkrtcy., E.D.N.Y.1980).

9. The petitioning creditors in their brief extensively discuss the legality of the loan from the Manchester Community Bank, an issue not relevant to this proceeding.

pay Paluska and that Benson would not otherwise have provided these monies. Under such circumstances, there was no diminution of the estate, and no preference to be set aside. *Grubb v. General Contract Purchase Corp.*, 94 F.2d 70 (2d Cir. 1938); *In re Loring*, 30 F.Supp. 758 (D.Mass.1939).

In view of all that has been said, the petition against this alleged debtor is dismissed pursuant to § 305(a)(1), as the court finds the interests of Win-Sum and its creditors will be better served by such dismissal. It is

SO ORDERED.