John PAROLINE, Petitioning Creditor,

v.

Scott T. DOLING, Debtor.

Bankruptcy No. 3-89-04489.

United States Bankruptcy Court,
S.D. Ohio, W.D.

June 19, 1990.

Donald F. Harker, Dayton, Ohio, for peti-
tioner, John Paroline.

Joel Shapiro, Goldman, Rubin & Shapiro,
Dayton, Ohio, for debtor.

## DECISION ON TRIAL OF INVOLUN-TARY PETITION IN BANKRUPTCY AND ORDERS CONTINUING TRIAL PROCEEDINGS, MODIFYING AU-TOMATIC STAY AND REQUIRING FILING OF STATUS REPORTS

WILLIAM A. CLARK, Bankruptcy
Judge.

This case came before the court for trial
upon an involuntary petition in bankruptcy
filed by John Paroline. The petition alleg-

es that Scott T. Doling is generally not paying his debts as they become due and requests an order of relief under chapter 7 of the Bankruptcy Code. The court has jurisdiction pursuant to 28 U.S.C. § 1334 and the standing order of reference entered in this district. Because this matter is a "case under title 11," this court "may enter appropriate orders and judgments." 28 U.S.C. § 157(b)(1).

## FACTS

In March of 1989 the petitioning creditor, John Paroline, was granted a jury award of $1.3 million for compensatory damages against the debtor, Scott T. Doling, in the Common Pleas Court of Montgomery County, Ohio.[1] The judgment arose out of an automobile accident between the petitioning creditor and the debtor. At the time of the accident, the debtor was driving an automobile belonging to his employer, Doling and Associates Dental Laboratory, Inc.[2] As a result of the accident, the petitioning creditor was hospitalized for several weeks, suffered the loss of his spleen and a kidney, and spent approximately six months convalescing.

During the state court proceedings, Doling and Associates Dental Laboratory, Inc., and its president, Ted. F. Doling, filed a third party complaint against Barnes, Thomas Insurance Agency, Inc., and John Thomas. The complaint alleged that:

5. Third Party Defendants negligently failed to procure and place in effect insurance which would have protected Third Party Plaintiffs' losses claimed against them by the Plaintiffs in the original cause herein to the extent of $1,000,000 over and above $100,000 in primary automobile coverage and legal fees for the defense of the action brought by the Plaintiffs in the original cause herein. Such coverage is commonly known as an "umbrella policy."

6. As a result of the negligence of Third Party Defendants, Third Party Plaintiffs have been damaged to the extent of any judgment obtained by the Plaintiffs in the original cause against the Third Party Plaintiffs in excess of $100,000 and to the extent of $1,000,000 plus their costs of defense.

The complaint concluded with a demand against the Third Party Defendants for indemnity against any judgment against the Third Party Plaintiffs up to $1,000,000. On September 29, 1989 the third party complaint was voluntarily dismissed.

At the trial on the involuntary petition in bankruptcy, the debtor testified that, in addition to the claim of the petitioning creditor, he owed the following debts: Beneficial Finance ($500), Mastercard ($800), Lazarus ($150), Visa ($700), doctors' bills ($100), and Society Bank ($12,090 as a cosigner). The debtor also testified that payments on all of the monthly installments for these debts were current and that he had paid nothing to the petitioning creditor.

It also appears from the record that the Cincinnati Insurance Company (the insurer of Doling and Associates Dental Laboratory, Inc.) has deposited $100,000 with the Clerk of the Common Pleas Court of Montgomery County, Ohio.

## CONCLUSIONS OF LAW

The sole dispute between the parties is whether the debtor is "generally not paying" his debts as required by § 303 of the Bankruptcy Code:

(h) If the petition is not timely controverted, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed. Otherwise, after trial, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed, only if—

---

**1.** Although several issues in the state court proceeding have been appealed by the *petitioning creditor*, counsel for the creditor stated at the trial on the involuntary petition that the creditor is not appealing the $1.3 million judgment for compensatory damages.

**2.** Subsequently, the debtor was convicted of a charge of driving while intoxicated. The parties agree that the creditors claim for $1.3 million would be nondischargeable under § 523(a)(9) of the Bankruptcy Code.

(1) the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute; or

(2)....

11 U.S.C. § 303(h). The precise issue before the court is whether the debtor, who is current in paying all but one of his debts, is "generally not paying" his debts as required by § 303(h)(1).

The legislative history is of dubious assistance in determining the meaning of the phrase "generally not paying such debtor's debts":

Resort to the legislative history for insight as to the meaning of subdivision (1) of § 303(h) is unproductive due to the absence of a conference committee resolution of the differences between the House version ("generally unable to pay") and the Senate version ("generally unable to pay or has failed to pay a major portion thereof") of the legislation which emerged as the Bankruptcy Code. *In re Arker,* 6 B.R. 632, 635 (Bankr.E.D. N.Y.1980).

However, the Second Circuit, after noting the Senate's version of § 303(h)(1) (which was not made part of the Bankruptcy Code) was considerably more favorable to the grant of relief where a single large creditor or only a few such creditors sought bankruptcy, concluded that the legislative history "clearly points to insistence by Congress on generality of default." *B.D. Internat'l Discount Corp. v. Chase Manhattan Bank, N.V. (In re B.D. Internat'l Discount Corp.),* 701 F.2d 1071, 1076 (2nd Cir.1983).[3]

Consistent with this concept of "generality of default" and the reference of § 303(h)(1) to the debtor's nonpayment of his debts, rather than debt, the courts have generally held that the nonpayment of a single debt does not constitute a default general enough to qualify for relief under § 303(h)(1):

The general rule appears to be that if there is but a single debt that a debtor is not paying then the case should be dismissed, since the creditor cannot prove the debtor is generally not paying its 'debts' as they become due. In the absence of exceptional circumstances, a debtor must neglect more than one debt for the nonpayment to be 'general.' *In re Central Hobron Associates,* 41 B.R. 444, 448–449 (D.Hawaii 1984)

However, exceptions to the general rule of denying the involuntary petition of a single creditor with the only delinquent debt have arisen where the creditor demonstrates that 1) the debtor has engaged in trick, sham, artifice or fraud; or 2) the creditor has a special need for bankruptcy relief such as where state law remedies are inadequate. *Bankers Trust Company BT Service Co. v. Nordbrock (In re Nordbrock),* 772 F.2d 397 (8th Cir.1985); *In re Central Hobron Associates,* 41 B.R. 444 (D.Hawaii 1984); *In re Gold Bond Corp.,* 98 B.R. 128 (Bankr.R.I.1989); *Matter of LeSher Internat'l, Ltd.,* 32 B.R. 1 (Bankr.S.D.N.Y.1982); *In re Arker,* 6 B.R. 632 (Bankr.E.D.N.Y. 1980); *Matter of 7H Land & Cattle Co.,* 6 B.R. 29 (Bankr.Nev.1980).

■ Because the petitioning creditor in an involuntary case bears the burden of proving that a debtor is "generally not paying" his debts as they become due, *In re R.N. Salem Corp.,* 29 B.R. 424 (D.S.D. Ohio 1983), *Matter of Win–Sum Sports, Inc.,* 14 B.R. 389 (Bankr.Conn.1981), the petitioning creditor, here, must demonstrate that he falls within one of the two exceptions to the general rule, above, before the court will enter an order for relief.

■ As represented at the trial on this petition, the petitioning creditor believes that the debtor may possess a cause of action against the Cincinnati Insurance Company, Barnes, Thomas Insurance Agency, Inc., or John Thomas for failure to provide Doling and Associates Dental Laboratory, Inc., with umbrella insurance coverage or for some other type of bad faith conduct. This cause of action is the "asset" that the petitioning creditor seeks to

---

**3.** The Second Circuit also observed that "if Congress thought it had provided a test that would lead to quick and sure determinations, it was badly misadvised and should consider returning to the drawing board." 701 F.2d at 1076.

have administered by the bankruptcy court. In his memorandum of law the petitioning creditor asserts that "[t]he debtor's actions are an effort to place the one asset which could satisfy the judgment debt beyond the reach of the petitioner ... (Doc. No. 8). No evidence was presented at the trial, however, to sufficiently demonstrate that the debtor has engaged in trick, sham, artifice or fraud with respect to the cause of action. At the trial the debtor testified that he was not aware that he might have a claim against the Cincinnati Insurance Company or its agents. In response to a question concerning a possible claim against the insurance company, the debtor answered, "You'll have to ask my lawyers." Whatever the debtor's precise knowledge concerning the potential claim, there was no evidence presented of any actions by the debtor that would support a finding of trick, sham, artifice or fraud.

■ With respect to whether the petitioning creditor has an adequate remedy under state law, the creditor simply states that "[t]here are no assets of the debtor which can be reached in the state courts" (Doc. No. 8). The debtor notes that "Petitioner has available to him the entire panorama of proceedings in aid of execution provided by the Ohio Revised Code" (Doc. No. 6). Although neither party has offered the court any assistance in determining whether there is an adequate state court remedy, it must be remembered that it is the petitioning creditor's burden to convince this court that he has no adequate remedy under state law. He has not done so.

The court is aware that the petitioning creditor has previously filed a supplemental complaint in state court against the insurance company, its agents, the debtor and others under Ohio Revised Code § 3929.06 The debtor's memorandum of law states that "the filing of this supplemental complaint was disallowed by the lower State Court, not because the causes of action are not apt, but because, procedurally, they cannot be filed as a supplemental complaint, but must be filed as new litigation" (Doc. No. 6). This court has not been pro-

vided with a copy of a state court decision or order to aid in evaluating the merits of the debtor's assertion. Ohio Revised Code § 3929.06 basically enables an injured party who has obtained a judgment against an insured to proceed directly against the insured's insurance company. But at this stage of the bankruptcy proceedings, this court is not concerned with whether the petitioning creditor has an adequate state law remedy against the insurance company. This court is merely trying to ascertain whether the petitioning creditor has an adequate state law remedy against the debtor. Other than filing an unsuccessful supplemental complaint, the petitioning creditor has taken no steps in state court to enforce its judgment against the debtor nor has he offered any detailed explanation as to why various remedies under Ohio law would be unsuccessful.

It is not, at this time, this court's inclination to carefully review each of the possible Ohio law remedies and determine whether they would be successful or unsuccessful; that laborious task rests with the petitioning creditor. However, the court does note that Ohio Revised Code § 2333.01 may provide a method to reach the debtor's potential claim against the insurance company or its agent and other potential parties. That statute, which is a proceeding in aid of execution, is in the nature of a creditor's bill which permits a judgment creditor to reach equitable assets of a judgment debtor such as money contracts, claims, or choses in action. Although the court in *Lakeshore Motor Freight v. Glenway Industries*, 2 Ohio App.3d 8, 440 N.E.2d 567 (1981) refused to *substitute* a judgment creditor for the judgment debtor in prosecuting a breach of contract claim in a *pending* suit, the court's *dicta* indicates that the result may be different when the judgment debtor has failed to prosecute a chose in action:

One may note, in passing, the existing statutory remedy available to judgment creditors confronted with faithless or fraudulent debtors, R.C. 2333.22, which permits a court, exercising its equitable powers, to appoint a receiver of the debtor's property who may then assume the

burden of prosecuting the debtor's chose in action. *Id.* 440 N.E.2d at 570 n. 2.

■ This court does not know, of course, whether the petitioning creditor would be successful under Ohio Revised Code § 2333.01 or any other Ohio statute. There has been no attempt by the petitioning creditor to utilize the state court to directly reach the debtor's potential asset as a means of enforcing the petitioning creditor's judgment. If a creditor who is the only creditor not being paid by a debtor is able to go to state court to collect a debt, the creditor does not have a special need for bankruptcy relief and, therefore, does not fall into the exception to the general rule barring relief to a single creditor with the sole delinquent debt. *In re Gold Bond Corp., supra,* 98 B.R. at 129; *In re Central Hobron Associates, supra,* 41 B.R. at 451. Here, an inadequacy of state court remedies has not been demonstrated.

The court is aware that the statute of limitations for filing actions against the insurance company, its agents, and others will expire in December of 1990. Therefore, to ensure that any potential rights of the debtor against the insurance company and others do not expire to the detriment of the petitioning creditor and the debtor, and to avoid the expense and inefficiency of refiling an involuntary petition in the event the petitioning creditor's state law remedies are shown to be inadequate, the trial on the involuntary petition will be continued pursuant to 11 U.S.C. § 105 in order to permit the petitioning creditor an opportunity to pursue any state law remedies he may possess. At this continued trial, the petitioning creditor will be expected to present evidence of diligent efforts to enforce his judgment against the debtor's potential asset and to file a memorandum of law demonstrating that he has exhausted his remedies under Ohio law.[4] As an incident of permitting the petitioning creditor to proceed in state court, the automatic stay of § 362 must be modified.

For the foregoing reasons it is hereby ORDERED that further trial proceedings on the petitioning creditor's involuntary petition will be held on *Thursday, October 4, 1990 at 9:30 a.m.* It is further ORDERED that the automatic stay of 11 U.S.C. § 362 is modified to permit the petitioning creditor to attempt to enforce his judgment in state court to reach any claim the debtor may have against any person or entity in connection with the petitioning creditor's judgment against the debtor. It is also ORDERED that the petitioning creditor file status reports with this court at 30 day intervals following the date of this decision which indicate what actions have been filed in state court against the debtor and the progress of those proceedings.

---

**4.** The court must note that it will view the debtor's responses to the petitioning creditor's state court proceedings with careful attention. Having maintained in this court that the "causes of action could be reached in State Court" (Doc. No. 9), it would be surprising if the debtor began to assert in state court that the debtor's cause of action could not be reached by the petitioning creditor. Efforts to whipsaw creditors are not viewed favorably by this court.

Likewise, the actions of the petitioning creditor *in state court* will be *carefully scrutinized.* Any indication that the petitioning creditor is not pursuing his possible state court remedies in the most timely fashion may give rise to negative inferences regarding the petitioning creditor's special need for bankruptcy relief.

Finally, the court must observe that the parties may be making this matter more complicated than necessary. It appears that a simple *assignment by the debtor of his claims or causes* of action to the petitioning creditor would obviate the need for both involuntary bankruptcy proceedings and state court execution proceedings. This court is not extensively familiar with the relationships among the various persons and entities connected with the state court trial and may be gravely mistaken in its initial impression of those relationships; however, the court respectfully suggests that one of the attorneys in this case carefully evaluate his position with respect to the potential for conflict of interests.