In re ONE STOP INDUSTRIES, Debtor.

Anthony S. NOVAK, Trustee, Plaintiff,

v.

CABLE USA, INC., Defendant.

Bankruptcy No. 2–92–00319.
Adv. No. 2–93–2393.

United States Bankruptcy Court,
D. Connecticut.

March 20, 1995.

Edward C. Taiman, Jr., Chorches & Novak, P.C., Wethersfield, CT, for trustee-plaintiff.

Lissa J. Paris, Robert E. Kaelin, Murtha, Cullina, Richter and Pinney, Hartford, CT, for defendant.

## MEMORANDUM OF DECISION AND ORDER RE: CROSS–MOTIONS FOR SUMMARY JUDGMENT

ROBERT L. KRECHEVSKY, Chief Judge.

### I.

Before the court in this action to recover an alleged preferential transfer are cross-motions for summary judgment in which, as stated by the defendant, "[b]oth parties agree that ... the narrow issue [is] ... whether the Debtor had an interest in certain funds transferred to [the defendant]." Defendant's Reply Memorandum at 1. Because the court concludes that the debtor had such an interest, the plaintiff-trustee's motion for summary judgment will be granted, and the defendant's like motion denied.

### II.

### BACKGROUND

One Stop Industries, Inc. (the debtor) entered into a contract with the United States of America, Department of Defense (USA), dated September 5, 1986 (the contract), providing that the debtor, for the sum of $177,-298.34, would deliver a certain quantity of electric cable to the USA. Defendant's Exhibit A–1. The contract included a statement that "cable material to be provided by Cable U.S.A. of Naples, Florida." The debtor, at some point, entered into a subcontract with Cable U.S.A., Inc. (the defendant) for the production of the cable. Plaintiff's Exhibit 1.

Following the manufacturing of the cable, the USA, by letter dated September 28, 1990, advised the debtor that for the "convenience of the Government," the contract with the debtor had been "completely terminated" as of May 4, 1990. Defendant's Exhibit A–3. According to the deposition testimony of Paul J. Sullivan, a termination contracting officer of the USA, the USA negotiated settlements upon contract termination only with the prime contractor as the USA did not consider that it had any privity with subcontractors. Defendant's Exhibit A, p. 18.

The defendant advised the debtor, by letter dated April 11, 1991, that "we would consider a settlement of $144,000 on the contract." Defendant's Exhibit A–4. The debtor submitted a termination contract settlement offer dated July 1, 1991, requesting payment of $161,400, of which $152,700 was identified as for "Settlements With Subcontractors." Defendant's Exhibit A–4. The $152,700 included the defendant's claim of $144,000 plus an $8,700 claim by a second subcontractor, Cableco, Inc. (Cableco).

The USA subsequently approved the debtor's settlement with the defendant but rejected the Cableco claim. The debtor and the

USA, on November 4, 1991, entered a supplemental agreement styled "Amendment of Solicitation/Modification of Contract" (the Termination Agreement), pursuant to which the USA agreed to pay the debtor (identified therein as "the Contractor") $144,000. Defendant's Exhibit A–7. The Termination Agreement included the following standard paragraph:

> (5) The Contractor shall, within 10 days after receipt of the payment specified in this agreement, pay to each of its immediate subcontractors (or their respective assignees) the amounts to which they are entitled, after deducting any prior payments and, if the Contractor so elects, any amounts due and payable to the Contractor by those subcontractors.

The USA, on December 11, 1991, issued a check for $144,000 made payable to the debtor. Defendant's Exhibit A–8. The debtor endorsed the check to the order of the defendant and sent it to the defendant. Defendant's Exhibit D. The defendant received the check on or about December 20, 1991.

On January 28, 1992, creditors filed an involuntary Chapter 7 petition against the debtor. The bankruptcy court issued an order for relief on July 16, 1992, and on July 24, 1992, Anthony S. Novak was appointed trustee. The trustee commenced this adversary proceeding by complaint filed December 29, 1993, seeking in count one to recover the $144,000 transferred by the debtor as a preferential payment.[1]

The defendant filed its motion for summary judgment on November 9, 1994, contending there are no genuine issues of material fact and that it is entitled to summary judgment as a matter of law. The trustee, on December 28, 1994, filed opposition papers and a cross-motion for summary judgment. While conceding that some of the facts and the inferences to be drawn from them are subject to dispute, the trustee urges that all *material* facts are undisputed and that summary judgment is, at this juncture, appropriate.

## III.

### DISCUSSION

■ "[T]he preference provisions facilitate the prime bankruptcy policy of equality of distribution among creditors of the debtor. Any creditor that received a greater payment than others of his class is required to disgorge so that all may share equally." H.R.Rep. No. 595, 95th Cong. 1st Sess. 177–78 (1977), 1978 U.S.Code Cong. & Admin.News 1978, pp. 5787, 6138.

Code § 547.empowers a trustee to avoid "a transfer by a debtor of his property to a creditor on account of an antecedent debt within ninety days of bankruptcy whereby the creditor receives more than he would have received had the debtor liquidated under chapter 7." *Coral Petroleum, Inc. v. Banque Paribas–London,* 797 F.2d 1351, 1355 (5th Cir.1986). The present dispute focuses on whether the $144,000 check the debtor endorsed over to the defendant. constituted property of the debtor.

The defendant does not seriously contest that the other § 547 elements of a preferential transfer are established. It is clear to the court that the defendant was a creditor of the debtor. The defendant argues at one point that its claim was with the USA and there was no antecedent debt owed by the debtor. *See* Defendant's Statement of Disputed Material Facts ¶ 29, at 6. This statement is wholly unsupported and contrary to the defendant's concession that it had no privity of contract with the USA. *See id.* ¶ 18, at 4. Moreover, it is clear that the defendant produced and delivered the cable and was awaiting payment from the debtor. *See id.* ¶ 3, at 2. Thus, the defendant's "mere conclusory allegations" fail to create a genuine factual issue as to whether there existed an antecedent debt. *See Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir.1980) (citations omitted).

The defendant does not meaningfully contend that the debtor was solvent at the time of the transfer, or allege any facts to controvert that the transfer enabled the defendant

1. The complaint included a second count containing fraudulent conveyance allegations. Those contentions are unsupported, and are not further discussed.

to receive more than it would have under a Chapter 7 liquidation.[2] The dispositive issue is whether the $144,000 check endorsement was a transfer involving property of the debtor. The trustee asserts that the endorsement by the debtor in favor of the defendant constituted such a transfer because the check was payable to the debtor and the check was within the debtor's effective control upon receipt.

The defendant, in support of its contention that the debtor had no interest in the $144,000 check, invokes an "earmarking" doctrine. The defendant argues that because the USA paid the debtor pursuant to ¶ 5 of the Termination Agreement, the payment was "earmarked for [defendant] Cable and did not constitute property in which the debtor had an interest." Defendant's Initial Brief at 11.

The earmarking doctrine is "a judicially created defense to preference actions.... [which] is typically applicable when a third party makes a *loan* to a debtor to satisfy the debt of a designated creditor. In other words, a new creditor is substituted for an old creditor." *In re Interior Wood Products Co.*, 986 F.2d 228, 231 (8th Cir.1993) (emphasis added). "If all that occurs in a 'transfer' is the substitution of one creditor for another, no preference is created because the debtor has not transferred property of his estate; he still owes the same sum to a creditor, only the identity of the creditor has changed. This type of transaction is referred to as 'earmarking'...." *Coral Petroleum*, 797 F.2d at 1356.

The Second Circuit early on recognized the earmarking doctrine, without so labeling it. *Grubb v. General Contract Purchase Corp.*, 94 F.2d 70 (2d Cir.1938). In *Grubb*, the debtor obtained from a trust company a loan to pay off an existing creditor. The court ruled where the money was never in the control of the debtor, and there has been merely a substitution of one creditor for another, the money advanced by the new creditor never became part of the debtor's assets,

and a preference action would not be sustained. *Grubb*, 94 F.2d at 72. *See also In re Win–Sum Sports, Inc.*, 14 B.R. 389, 394–95 (Bankr.D.Conn.1981) (citing *Grubb*); *In re Kemp Pacific Fisheries, Inc.*, 16 F.3d 313, 316 (9th Cir.1994) ("the 'earmarking doctrine' is justified by the fact that in such a case the funds neither are controlled by, nor belong to, the debtor"); *In re Interior Wood Prods. Co.*, 986 F.2d 228, 232 (8th Cir.1993) (stating that substitution of a new creditor for an old creditor is "a key factor characteristic of the earmarking doctrine").

To support the application of the earmarking doctrine, the defendant relies primarily on *Branch v. Hill, Holliday, Connors, Cosmopoulos, Inc. Advertising (In re Bank of New England Corp.)*, 165 B.R. 972 (Bankr. D.Mass.1994) (hereafter *BNEC*). There, the debtor (a holding company) received funds from subsidiary companies to pay for advertising services an agency had provided to the subsidiaries. The debtor used those funds to pay the agency, and the trustee subsequently sought to recover the payments as preferences. The *BNEC* court concluded that the transfers amounted to "a straight pass-through of funds" that did not constitute a preferential payment. *Id.* at 978. It noted that that case did not involve a pure earmarking situation. *Id.* at 977. The *BNEC* ruling should not be extended beyond the peculiar facts of that case.

The court concludes that the earmarking doctrine is not applicable in this matter. There has been no substitution of a new creditor for an old one. Instead, the present matter involves the transfer by the debtor of $144,000 to the defendant. The USA paid the debtor by a check made out to the debtor and imposed no legal or enforceable control over the debtor's use of the check.[3] That the debtor endorsed the check to the defendant does not alter the fact that the debtor had complete prior control over the funds. As a result of the debtor forward-

---

2. Section 547(e) provides:

For the purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition.

3. Sullivan testified that the only sanction the USA imposes if a prime contractor does not pay a subcontractor is that the USA will not thereafter contract with that contractor. Defendant's Exhibit A, p. 45.

ing the check to the defendant, the debtor's estate was clearly diminished. In such an instance, the earmarking doctrine, or any variation thereof, is inapplicable. An account payor's prepetition direction to a debtor to pay specified creditors out of the receivable cannot be the basis for flanking the preference provisions of the Bankruptcy Code. *See In re Bohlen Enterprises, Ltd.*, 859 F.2d 561, 566 (8th Cir.1988) ("[A]lmost every [earmarking] opinion emphasizes that the result involves 'no diminution' in the debtor's estate."); *In re Interior Wood Products Co.*, 986 F.2d at 232 (Where buyer of debtor's assets paid one of debtor's creditors as part of purchase price, earmarking doctrine is not applicable and creditor is liable for preference. "The intent of the parties is not a factor to consider when determining if the payment constituted a voidable preference."). The trustee may avoid the transfer of the $144,000 to the defendant as a preferential payment and have judgment for such sum. The trustee's motion for summary judgment is granted. The defendant's motion for summary judgment is denied. It is

SO ORDERED.